Joe **BARTON**, Sr., Appellant,

v.

The **STATE** of Texas, Appellee.

No. 09–96–115 CR.

Court of Appeals of Texas, Beaumont.

Submitted May 1, 1997.

Decided Dec. 17, 1997.

Discretionary Review Refused Feb. 25, 1998.

Charles W. Medlin, Houston, for appellant.

Scott W. Rosekrans, Criminal District Attorney, Coldsprings, for State.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

Appellant Joe Barton entered an agreed plea of guilt to the offense of possessing 400 or more grams of cocaine with a recommendation of twenty years' confinement and no fine from the State. This appeal only tests the trial court's denial of appellant's Motion to Suppress.

Point of error one contends that the trial court erred in denying the motion to suppress because the affidavit which secured issuance of the search warrant failed to provide the reviewing magistrate enough evidence so as to determine whether the unnamed informant was adequately credible or reliable. The operative portion of the probable cause affidavit reads as follows:

> Affiant is a peace officer in and for the State of Texas, and is currently employed as the sheriff of San Jacinto County, Texas. Affiant will show that on October 25, 1995, he was at the Sheriffs Department and while at the office affiant received a 911 call from a residence in the Pine Valley area of San Jacinto County, in reference to narcotic trafficking. Affiant will show that he travelled to the location of the 911 call and affiant met with a confidential informant, who advised affiant that they, informant, had recovered a package wrapped in cellophane and tape, that informant believed contained illegal narcotics. Affiant observed the package and noted that the package was of the type commonly used to conceal cocaine. Affiant cut into the package, and found it to contain a white powdery substance that when field tested by affiant, showed positive for cocaine. Affiant spoke with informant in regards to where the package had been discovered, and informant advised that the package had been located in an outbuilding, located on property in the care, control and custody of Joe Barton, as described above in this affidavit. Informant advised that there were several more packages located on the same property, and wrapped in the same manner. Informant advises affiant that informant has been on the premises in the last 24 hours and resides at the location with Joe Barton, and this allowed informant access to the property, as well as the contraband turned over to affiant.

█ A search warrant may not legally issue unless it is based on probable cause. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; TEX. CODE CRIM. PROC. ANN. art. 1.06 (Vernon 1977); *Hughes v. State*, 843 S.W.2d 591, 593 (Tex.Crim.App.1992). Under both the Fourth Amendment and article I, section

9, an affidavit is sufficient to establish probable cause if, from the totality of the circumstances reflected in the affidavit, the magistrate was provided with a substantial basis for concluding that probable cause existed. *Illinois v. Gates,* 462 U.S. 213, 238–239, 103 S.Ct. 2317, 2331–2332, 76 L.Ed.2d 527, 549 (1983); *Bower v. State,* 769 S.W.2d 887, 902 (Tex.Crim.App.1989), *overruled on other grounds, Heitman v. State,* 815 S.W.2d 681 (Tex.Crim.App.1991). Probable cause sufficient to support a search warrant exists if the facts contained within the four corners of the search warrant affidavit [1] and the reasonable inferences drawn therefrom justify the magistrate's conclusion that the object of the search is probably on the premises at the time of the warrant's issuance. *Cassias v. State,* 719 S.W.2d 585, 587–588 (Tex.Crim. App.1986). While appellant's brief contains numerous citations to *Gates* and its progeny, we feel that appellant's argument on the issue continues to take the very rigid approach to review of probable cause determinations that *Gates* expressly intended to eradicate.

*Gates* recognized that when basing a search warrant on information provided by a confidential informant, the issuing magistrate should generally have before her sufficient information to adequately reveal, first, the informant's "basis of knowledge," which the Supreme Court described as "the particular means by which he (the informant) came by the information given in his report." *Gates,* 462 U.S. at 228, 103 S.Ct. at 2326–27, 76 L.Ed.2d at 542. Additionally, the issuing magistrate should examine the affidavit for information establishing *either* the "veracity" of the affiant's informant, *or, alternatively,* the "reliability" of the informant's report. *Id.* at 229, 103 S.Ct. at 2327–28, 76 L.Ed.2d at 542. *Gates,* therefore, appears to distinguish, in some sense, between an informant's "veracity," and the "reliability" of the information provided by the informant. And while the *Gates* court recognized that "an informant's 'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant in determining the value of his report[,][it] d[id] not agree, however, that these elements should

be understood as entirely separate and independent requirements to be rigidly exacted in every case[.]" *Id.* at 230, 103 S.Ct. at 2328, 76 L.Ed.2d at 543. The Court further loosened the grip of these three elements *vis a vis* appellate review by noting that they "should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id.*

We cannot emphasize enough to criminal practitioners the importance of a close and careful reading of *Gates* in order to get the full impact of just how much more relaxed the appellate standard of review was to be in its wake. We include the following rather lengthy quote from *Gates* to illustrate this point.

> This totality-of-the-circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific "tests" be satisfied by every informant's tip. Perhaps the central teaching of our decisions bearing on the probable-cause standard is that it is a "practical, nontechnical conception." *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302 [, 1311], 93 L.Ed. 1879 (1949). "In dealing with probable cause, … as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Id., at 175, 69 S.Ct. at 1302, 93 L.Ed. at 1879. *U.S. v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), regarding "particularized suspicion," is also applicable to the probable-cause standard:
>
> > "The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and

---

1. In determining the sufficiency of the search warrant, a reviewing court is limited to the four corners of the affidavit for the warrant. *Jones v. State,* 833 S.W.2d 118, 123 (Tex.Crim.App.1992).

so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."

As these comments illustrate, probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules. Informants' tips doubtless come in many shapes and sizes from many different types of persons. As we said in *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921[, 1923–24], 32 L.Ed.2d 612 (1972): "Informants' tips, like all other clues and evidence coming to a policemen on the scene, may vary greatly in their value and reliability." Rigid legal rules are ill-suited to an area of such diversity. "One simple rule will not cover every situation." Ibid.

Moreover, the "two-pronged test" directs analysis into two largely independent channels—the informant's "veracity" or "reliability" and his "basis of knowledge." (footnote signal omitted) There are persuasive arguments against according these two elements such independent status. Instead, they are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability. See, e.g., *Adams v. Williams*, supra, 407 U.S. 143 at 146–47, 92 S.Ct. 1921 [at 1923–24], 32 L.Ed.2d 612; *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

. . . .

. . . Unlike a totality-of-the-circumstances analysis, which permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip, the "two-pronged test" has encouraged an excessively technical dissection of informants' tips, with undue attention being focused on isolated issues that cannot sensibly be divorced from the other facts presented to the magistrate.

. . . .

We have also recognized that affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741[, 745–46], 13 L.Ed.2d 684 (1965). Likewise, search and arrest warrants long have been issued by persons who are neither lawyers nor judges, and who certainly do not remain abreast of each judicial refinement of the nature of "probable cause." See *Shadwick v. City of Tampa*, 407 U.S. 345, 348–350, 92 S.Ct. 2119[, 2121–23], 32 L.Ed.2d 783 (1972). The rigorous inquiry into the Spinelli prongs and the complex superstructure of evidentiary and analytical rules that some have seen implicit in our Spinelli decision, cannot be reconciled with the fact that many warrants are—quite properly, [*Id.*]—issued on the basis of nontechnical, common-sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings. Likewise, given the informal, often hurried context in which it must be applied, the "built-in subtleties," *Stanley v. State*, 19 Md.App. 507, 528, 313 A.2d 847, 860 (1974), of the "two-pronged test" are particularly unlikely to assist magistrates in determining probable cause.

*Gates*, 462 U.S. at 230–236, 103 S.Ct. at 2328–31, 76 L.Ed.2d at 543–546. (footnotes omitted)

In addition to a clearly more relaxed standard for assessing whether an informant's tip contains the appropriate combination of facts and circumstances permitting the issuance of a search warrant by a magistrate, the *Gates* court took pains to reiterate the axiom that "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review[,]" and that a magistrate's determination of probable cause should be paid "great deference" by reviewing courts. *Id.* at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547. It is at this point that we

must recognize a recent opinion by the Court of Criminal Appeals, *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App. 1997). In *Guzman*, the Court held that appellate courts in Texas, including the Court of Criminal Appeals itself, may review, *de novo*, "mixed questions of law and fact" (such as the issue of the existence of probable cause) so long as the trial court's decision does not turn on an evaluation of the credibility and demeanor of witnesses. *Id.*, 88–89 In so holding, the *Guzman* court expressly overruled *State v. Carter*, 915 S.W.2d 501 (Tex.Crim.App.1996); *DuBose v. State*, 915 S.W.2d 493 (Tex.Crim.App.1996); and *Arcila v. State*, 834 S.W.2d 357 (Tex.Crim.App.1992).

The apparent basis for the *Guzman* holding as set out in the opinion was the United States Supreme Court case of *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), which held that a trial court's determinations, for Fourth Amendment purposes, of reasonable suspicion or probable cause are to be reviewed de novo rather than "deferentially" or for "clear error." Toward the end of the Court's opinion in *Ornelas*, the following observation appears:

> The Court of Appeals, in adopting its deferential standard of review here, reasoned that *de novo* review for warrantless searches would be inconsistent with the " 'great deference' " paid when reviewing a decision to issue a warrant, see *Illinois v. Gates*, (citation omitted). See *United States v. Spears*, 965 F.2d 262, 269–271 (C.A.7 1992). We cannot agree. The Fourth Amendment demonstrates a "strong preference for searches conducted pursuant to a warrant," *Gates, supra*, at 236, 103 S.Ct. [at 2331], 76 L.Ed.2d [at 547], and the police are more likely to use the warrant process if the scrutiny applied to a magistrate's probable-cause determination to issue a warrant is less than that for warrantless searches. Were we to eliminate this distinction, we would eliminate the incentive.

*Ornelas*, 517 U.S. at ——, 116 S.Ct. at 1662–63, 134 L.Ed.2d at 920.

■ While the *Guzman* court is silent on the issue, the *Ornelas* court clearly makes a distinction between probable cause determinations for issuing warrants, and searches or seizures that take place based upon probable cause without a warrant. The *Ornelas* court continues to recognize the viability of the "great deference" standard reiterated in *Gates*. Since the instant case involves a probable cause determination by a magistrate and the subsequent issuance of a search warrant, we believe the "great deference" standard should apply to our review.

In the instant case, the face of the affidavit indicates that the informant met personally with the affiant, the Sheriff of San Jacinto County, at the same residence from which the informant had placed a "911" call to the affiant. At that location, the informant delivered to the affiant a package which contained powdered cocaine. This was confirmed when the affiant personally field tested the package's contents. The informant also indicated that he/she had been on the premises where said package was located within the last 24 hours and that more packages with similar wrapping were also located on said premises, specifically in an outbuilding located on the property belonging to appellant. Most important was the fact that the informant indicated that he/she resided with appellant at the premises. Living on the property allowed the informant access to the premises as well as to the contraband turned over to affiant. The informant also indicated he/she had been on the premises within the last 24 hours. On the first page of the affidavit under paragraph 3, the affiant indicates that appellant is "known to affiant."

■ Under the much less rigid standards announced in *Gates*, and affording the proper deference to the magistrate's decision to issue the search warrant, we find that the probable cause affidavit in the instant case contained appropriate facts and circumstances which provided the magistrate with a "substantial basis for concluding that a search would uncover evidence of wrongdoing[.]" *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547. The fact that the informant's "veracity" was not explicitly noted in the affidavit is not fatal to the ultimate determination of probable cause to search appellant's property. The informant's "basis

of knowledge" was more than sufficient to make up for any "veracity" deficiency. The informant stated that he/she lived on the premises where the contraband was located, lived with appellant, and had personally been on the premises in question within the past 24 hours. Furthermore, the "reliability" of the information provided was proven to a significant degree in that the affiant himself tested the contents of the package provided to him by the informant, with the results confirming the fact that the package indeed contained cocaine. From the totality of the circumstances, the magistrate, applying a practical, nontechnical approach to the information and weighing the probabilities, was provided with sufficiently appropriate facts and circumstances in the probable cause affidavit so as to conclude that there was a substantial basis for believing that a search of appellant's property would uncover evidence of wrongdoing. We therefore find no abuse of discretion by the trial court in denying appellant's motion to suppress based upon any alleged lack of credibility of the informant on the face of the probable cause affidavit. Point of error one is overruled.

Appellant's second point of error complains of the trial court's denial of the motion to suppress "because the police search of the Appellant's premises and adjoining area exceeded the scope of the search warrant's authority," thereby violating appellant's rights under both state and federal constitutions. The gist of appellant's argument can be found in the following language taken from his brief:

As applied to this case, the land searched by the officers was 1) some distance away; 2) outside a fenced area; and 3) where tall grass and weeds grew. There was no evidence presented by the State that this area was one which was host to regular family activity associated with the house.

As we appreciate appellant's position, he is contending the property upon which the contraband was located could not be considered "curtilage," as that term has been defined by case law, and was not under appellant's ownership, control, or management, and, therefore, totally outside the four corners of the search warrant. The record before us does support the factual assertions made by appellant on this issue. Unfortunately for appellant, such an argument places the issue within the confines of the "open fields" doctrine.

■ The Fourth Amendment protection accorded to the people in their persons, houses, papers, and effects is not extended to "open fields." *Oliver v. United States*, 466 U.S. 170, 176, 104 S.Ct. 1735, 1740, 80 L.Ed.2d 214, 222 (1984).

The "open fields" doctrine allows law enforcement officers to enter and search an area of land without a warrant. The term "open field" may be defined as any unoccupied or undeveloped area outside the curtilage of a dwelling. An "open field" need not be "open" or a "field" as those terms are commonly understood. A fenced, thickly wooded area may be an "open field" for the purpose of analysis under the Fourth Amendment.

*Carroll v. State*, 911 S.W.2d 210, 217 (Tex. App.—Austin 1995, no pet.) (citations and footnote omitted).

It has been held that marijuana found in a rural area about one hundred yards from a mobile home and barn was contraband growing in an "open field." Its seizure was legal even if the search warrant was invalid for lack of probable cause or other reason. *Beasley v. State*, 683 S.W.2d 132, 133 (Tex. App.—Eastland 1984, pet. ref'd). In *Beasley*, the contention that TEX. CONST. art. I, § 9 afforded greater protection than the Fourth Amendment with regard to "open fields" was rejected. It was held the Texas Constitution does not prohibit the application of the "open fields" doctrine. *Id.* at 135.

■ In the instant case, appellant, by arguing as he does on this issue, extinguishes any legitimate expectation of privacy in the particular piece of property upon which the contraband was ultimately located. Appellant does not argue the warrant did not permit the officers to be where they were when they first spotted the suitcase containing the contraband. Indeed, the evidence supports the fact that where Sheriff Rogers was standing when he first spotted the suitcase was included within the scope of the search warrant. We find, therefore, that no

constitutional protections belonging to appellant were implicated in the seizure of the contraband from property admittedly disowned and disclaimed by appellant. Point of error two is overruled.

Although we have overruled appellant's two points of error, we must nevertheless reverse and remand the cause to the trial court because of unassigned error on the face of the record. As we noted at the beginning of the opinion, appellant pleaded guilty to the indicted offense with the benefit of a negotiated punishment recommendation of twenty years' confinement and no fine. Yet the statutory provision applicable to the offense in question is TEX. HEALTH & SAFETY CODE ANN. § 481.115 (Vernon 1992 & Supp.1997). The provisions of § 481.115 took effect on September 1, 1994. The date of the instant offense was alleged to be on or about October 26, 1995. Section 481.115(f) provides the punishment for a conviction of having possessed a Penalty Group 1 controlled substance weighing *400 grams or more* at confinement for life or a term of not more than 99 years or less than *10* years, *and* by a fine not to exceed $100,000. The record before us reflects that both parties and the trial court were under the mistaken impression that the punishment range for the charged offense was that of a first degree felony. *See* TEX. PEN.CODE ANN. § 12.32 (Vernon 1994). The trial court provided appellant with TEX. CODE CRIM. PROC. ANN. art. 26.13 (Vernon 1989 & Vernon Supp.1997) admonishments, including the incorrect § 12.32 punishment range.

■ Since appellant's sentence did not contain a fine in addition to the period of incarceration, the punishment assessed was not authorized by law. Appellant's sentence is therefore void. *Heath v. State,* 817 S.W.2d 335, 339 (Tex.Crim.App.1991)(op. on reh'g). When faced with void sentences this Court has traditionally remanded the case back to the trial court for a new punishment hearing under the provisions of TEX.CODE CRIM. PROC. ANN. art. 44.29(b) (Vernon 1979 & Supp. 1997). However, as the instant case involved a negotiated plea of guilty, the proper remedy appears to require a remand of the case to the trial court so as to place both parties back in their original positions. *Heath,* 817 S.W.2d at 340. As was explained in *Shannon v. State,* 708 S.W.2d 850 (Tex.Crim.App. 1986):

> The court of appeals, in holding that appellant was entitled to resentencing, relied upon a long line of precedent establishing that, when an error relates only to punishment and the punishment was assessed by the trial court, a defendant is entitled solely to resentencing and not to a new trial. In applying this principle of law, this Court has never before distinguished the "negotiated guilty" plea from either "not guilty" pleas or "guilty" pleas without a recommendation. We take this opportunity to do so now.
>
> In this case the conviction is based upon a plea bargain and the punishment assessed is an integral part of the agreement to plead guilty. The idea that error is "punishment error" only is incompatible with the negotiated plea and we therefore disavow such analysis in this specific area. When a defendant attacks the sentence he received *and for which he bargained,* he is attacking the entire judgment of conviction. To permit resentencing in this situation is to bind only one party to the agreement. This is neither logical nor fair.

*Id.* at 851–52 (citations and footnote omitted).

■ In the instant case, although not raised by either party, the error was one that could not be ignored in the interest of justice. *See* TEX.R.APP. P. 2. We therefore reverse the judgment of the trial court and remand the cause to said court with orders that the trial court withdraw appellant's plea and that appellant be permitted to replead to the indictment in this cause.

REVERSED AND REMANDED.

STOVER, Justice, concurring.

I concur with the result in the majority opinion, as well as with the majority's conclusion that there was probable cause sufficient to support the search warrant. In my view, the reliability of the information—provided by an unnamed informant who, from a residence, called 911 in reference to narcotics trafficking, who personally met with the offi-

cer at the residence from which the 911 call was made, who turned over to the officer a package wrapped in cellophane and tape which the informant believed contained narcotics and which field-tested positive for cocaine—is increased by the very fact that the individual, though unnamed in the warrant, presented herself[2] in person to the officer and, thus, put herself in a position to be held accountable for her intervention. Her circumstance is more that of a private citizen or eyewitness type of informant, whose status does not raise the usual concerns involved in weighing the credibility of a confidential informant. *See Belton v. State*, 900 S.W.2d 886, 894 (Tex.App.—El Paso 1995, pet. ref'd) (information from an unnamed eyewitness informant was found to be sufficiently reliable and was used in establishing probable cause for an arrest warrant); *see also State v. Sailo*, 910 S.W.2d 184, 188 (Tex.App.—Fort Worth 1995, pet. ref'd) (information from an unnamed private citizen, who stopped and described to an officer his observations of a possible drunk driver and the driver's vehicle, was found to have increased reliability and require less corroboration to establish reasonable suspicion to justify a temporary detention). Furthermore, the informant herein advised the officer that the package was found on Barton's property, that there were other similar packages on the property, that she had been on the property within the last twenty-four hours, and that she resided with Barton at that residence. The positive field test of the package for cocaine provided sufficient corroboration of her information to justify the issuance of the warrant. Thus, the information provided by the informant, along with the corroboration of the cocaine in the package, provided a substantial basis for the magistrate to conclude that probable cause existed under the "totality of the circumstances" test.

---

**2.** The affidavit does not reveal the gender of the informant. The use of the female pronoun is for the convenience of the author of this concurrence.

**3.** Overruled by *Heitman v. State*, 815 S.W.2d 681, 690 (Tex.Crim.App.1991), only to the extent *Johnson* conflicted with its holding that the Court

BURGESS, Justice, concurring and dissenting.

I concur in the majority's reversal on the unassigned error. However, I respectfully dissent to the overruling of point of error one. As to a "de novo" review of the search warrant affidavit or a "great deference" standard, the majority, at page 8, believes the "great deference" standard should apply since *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim.App. 1997), is silent on the issue, but *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), on which *Guzman* relies, contains language indicating a de novo review is appropriate only in warrantless searches and the "great deference" standard should continue to apply in the review of search warrants. *Guzman* allows for a "de novo" review of mixed questions of law and fact in determining probable cause unless the resolution of ultimate facts turns upon an evaluation of credibility and demeanor, *Guzman* at 89, and specifically overruled *DuBose v. State*, 915 S.W.2d 493 (Tex.Crim. App.1996); *State v. Carter*, 915 S.W.2d 501 (Tex.Crim.App.1996); and *Arcila v. State*, 834 S.W.2d 357 (Tex.Crim.App.1992), all of which required deference to a trial court's ruling. *Guzman* does not mention *Johnson v. State*, 803 S.W.2d 272, 289 (Tex.Crim.App. 1990)[3] which contains the following language:

Appellate court review of the sufficiency of an affidavit is not a *de novo* review. The magistrate's determination of probable cause should be given great deference by the reviewing court. *Gates*, supra 462 U.S. at 236, 103 S.Ct. at 2331.[4] "[T]he traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Id.* at 236, 103 S.Ct. at 2331, citing *Jones v.*

of Criminal Appeals would not be bound by United States Supreme Court decisions when analyzing and interpreting the search and seizure provision of the Texas Constitution.

**4.** *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

*United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960), *overruled on other grounds,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). Nonetheless, "courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." *Id.* 462 U.S. at 239, 103 S.Ct. at 2333.

The issue in this case is strictly one of law: did the affidavit supporting the search warrant establish probable cause? On this issue, I do not find there was sufficient evidence, even under the totality of the circumstances test, for the magistrate to determine the credibility of the informant and consequently for the affidavit to establish probable cause. The majority, at page 9, states:

> Under the much less rigid standards announced in *Gates,* and affording the proper deference to the magistrate's decision to issue the search warrant, we find that the probable cause affidavit in the instant case contained appropriate facts and circumstances which provided the magistrate with a "substantial basis for concluding that a search would uncover evidence of wrongdoing[.] *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547. The fact that the informant's "veracity" was not explicitly noted in the affidavit is not fatal to the ultimate determination of probable cause to search appellant's property. The informant's "basis of knowledge" was more than sufficient to make up for any "veracity" deficiency.

There is no doubt the informant asserts a "basis of knowledge," but that basis was not verified by any independent police activity other than a "field test" of the contraband. Significantly, the police affiant does not make any conclusory statements that the confidential informant is credible nor did the police affiant verify, in the affidavit, that the informant resided at the location.

The majority quotes extensively from *Gates,* 462 U.S. at 213, 103 S.Ct. at 2317 76 L.Ed.2d at 527, and presents their analysis of the *Gates* holding as if our Court of Criminal Appeals and other courts of appeal had never considered the issue. *E.g., Coats v. State,* 815 S.W.2d 715, 716–17 (Tex.Crim.App.1991). In *Eisenhauer v. State,* 754 S.W.2d 159, 164 (Tex.Crim.App.1988),[5] the court stated:

> It is to be remembered that adoption of the analysis of *Gates* does not mean abandoning Aguilar–Spinelli.[6] *Gates* did not dispense with the two requirements used in the Aguilar–Spinelli test. Rather, in *Illinois v. Gates,* supra, the United Sates Supreme Court criticized the strict application of the two prongs of Aguilar–Spinelli, stating that although the veracity and basis of knowledge of the informant are highly relevant factors:
>
> > "These elements are not to be understood as entirely separate and independent requirements to be rigidly exacted in every case. (462 U.S. at 228–29, 103 S.Ct. at 2327).
>
> > . . . .
>
> > "Instead they are better understood as relevant considerations in the totality of circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some indicia of reliability. (462 U.S. at 231–33, 103 S.Ct. at 2329)."

*See also, Whaley v. State,* supra;[7] *Hennessy v. State,* supra.[8]

In conclusion, *Aguilar* was not followed in Texas in order to satisfy Article I, Section 9 of the Texas Constitution or Article 18.01, V.A.C.C.P.; it was followed because federal law demanded it. Federal law no

---

5. Overruled by *Heitman v. State,* 815 S.W.2d 681, 690 (Tex.Crim.App.1991), only to the extent *Eisenhauer* conflicted with its holding that the Court of Criminal Appeals would not be bound by United States Supreme Court decisions when analyzing and interpreting the search and seizure provision of the Texas Constitution.

6. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,*

393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

7. *Whaley v. State,* 686 S.W.2d 950 (Tex.Crim. App.1985).

8. *Hennessy v. State,* 660 S.W.2d 87 (Tex.Crim. App.1983).

longer demands it. In this area, the laws and constitution of the State of Texas impose no greater restrictive standard, leaving the Texas courts free to follow the lead of the Supreme Court of the United States. There being no binding authority to the contrary, today's opinion is made to stay in step with the federal constitutional model for probable cause determinations.

The duty of the reviewing court is to look to the totality of the circumstances to determine if there exists a substantial basis for concluding that probable cause existed at the time of the questioned action. *Angulo v. State*, supra, at 278.[9]

Later, in *Johnson*, 803 S.W.2d at 288–89, the court stated:

The task of the issuing magistrate is to make a practical common sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The affidavit must be more than a "mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause." The magistrate must be presented with "sufficient information" to allow that individual to determine probable cause; "his action cannot be a mere ratification of the bare conclusions of others." *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983).

. . . .

The reliability of the affiant and his sources of information are part of the "totality of the circumstances" that the magistrate should evaluate in making his probable cause determination.

The Fourteenth Court of Appeals in *Avilez v. State*, 796 S.W.2d 240 (Tex.App.—Houston [14th Dist.] 1990, pet. dism'd) stated:

The informant's "basis of knowledge" is not contested, but the affidavit is challenged for failure to meet the second prong of the *Aguilar–Spinelli* test which requires that sufficient facts be shown in the affidavit to establish the informant's "veracity" or the "reliability" of his report. It is

properly pointed out that a later holding in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), adopts a less restrictive "totality of the circumstances" standard but does not overrule the two prongs of *Aguilar–Spinelli*, and the combined standards of all three U.S. Supreme Court cases are used in Texas:

It is to be remembered that adoption of the analysis of *Gates* does not mean abandonment of *Aguilar–Spinelli*. *Gates* did not dispense with the two requirements used in the *Aguilar–Spinelli* test.

*Eisenhauer v. State*, 754 S.W.2d 159, 164 (Tex.Crim.App.1988), *cert. denied*, 488 U.S. 848, 109 S.Ct. 127, 102 L.Ed.2d 101.

*Id.* at 242 (footnote omitted).

In *Lowery v. State*, 843 S.W.2d 136, 140 (Tex.App.—Dallas 1992, pet. ref'd) the court stated:

Although the informant's veracity and reliability no longer are separate and independent requirements for each case, they are still "highly relevant" considerations in the totality-of-the-circumstances review. *Gates*, 462 U.S. at 231, 103 S.Ct. at 2328. There still must be some indicia of the reliability of the tip. *Knight v. State*, 814 S.W.2d 545, 547 (Tex.App.—Houston [1st Dist.] 1991, no pet.).

Thus it is clear to me, that even under "the totality of the circumstances" test there must be some indicia of the reliability or veracity of the informant. This can be shown in a variety of ways: unnamed informant had given true and correct information on several past occasions, *Elliott v. State*, 687 S.W.2d 359, 362 (Tex.Crim.App.1985); where an anonymous tip is relied on for a search and seizure, additional facts are required to establish probable cause under the totality of the circumstances test, *Amores v. State*, 816 S.W.2d 407, 416 (Tex.Crim.App.1991)(citing *Rojas v. State*, 797 S.W.2d 41 (Tex.Crim.App. 1990)); while information from unnamed informant alone did not establish probable cause, and information from named informant alone might not establish probable cause, the two sources together with appel-

**9.** *Angulo v. State*, 727 S.W.2d 276 (Tex.Crim.App.   1987).

lant's criminal background combined to produce a substantial basis for probable cause, *Janecka v. State*, 739 S.W.2d 813, 825 (Tex. Crim.App.1987); a police officer is presumed to be reliable and no special showings are required, *Marquez v. State*, 725 S.W.2d 217, 233 (Tex.Crim.App.1987); where a named informant is a private citizen whose only contact with the police is a result of having witnessed a criminal act committed by another, the credibility and reliability of the information is inherent, *Esco v. State*, 668 S.W.2d 358, 360–61 (Tex.Crim.App.1982); an informant's declarations against the informant's own penal interest may be used to corroborate the reliability of information in an affidavit, *Abercrombie v. State*, 528 S.W.2d 578, 583–85 (Tex.Crim.App.1974) (op. on reh'g); credibility and reliability of a first time informer established by underlying circumstances of lack of a criminal record, reputation in the neighborhood, and that informer was well thought of by fellow associates, *Adair v. State*, 482 S.W.2d 247 (Tex.Crim. App.1972). This affidavit contains none of these ways. I would sustain point of error one and remand on that issue also.