

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-18-00173-CR
_____

ORLANDO BELL, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 21st District Court
Burleson County, Texas
Trial Court No. 14,753; Honorable J. D. Langley, Presiding

July 24, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Following a plea of not guilty, Appellant, Orlando Bell, was convicted by a jury of failure to comply with the sex offender registration requirements of chapter 62 of the Texas Code of Criminal Procedure.[1] Because Appellant was required to register as a sex

---

[1] TEX. CODE CRIM. PROC. ANN. art. 62.102(a) (West 2018). A person commits the offense of failure to comply with sex offender registration requirements if the person is required to register and fails to comply with any requirement of chapter 62 of the Texas Code of Criminal Procedure.

offender based upon his prior conviction for the offense of sexual assault pursuant to section 22.011 of the Texas Penal Code,[2] his "duty to register expires under article 62.101(a) [of the Texas Code of Criminal Procedure]." *See* TEX. CODE CRIM. PROC. ANN. art. 62.101(a)(1) (West 2018). *See also* art. 62.001(6)(A) (defining an offense under section 22.011 of the Texas Penal Code as a "sexually violent offense"). As such, because he was required to verify his registration once each year under article 62.058 of the Texas Code of Criminal Procedure, the offense in question was a third degree felony. *Id.* at art. 62.102(b)(2).

The State attempted to enhance the applicable range of punishment by alleging two prior felony convictions.[3] A proper double-enhanced felony conviction requires the State to prove beyond a reasonable doubt that the second previous felony conviction was both final and "for an offense that occurred subsequent to the first previous felony conviction having become final." *See* TEX. PENAL CODE ANN. § 12.42(d) (West 2018). *See also Ex parte Pue,* 552 S.W.3d 226, 230-31 (Tex. Crim. App. 2018); *Jordan v. State*, 256 S.W.3d 286, 291 (Tex. Crim. App. 2008) (finding that "when the State seeks to enhance a defendant's sentence for the primary offense by alleging that a defendant has a prior conviction, and the defendant enters a plea of not true, *the factfinder must decide*

---

[2] TEX. PENAL CODE ANN. § 22.011(a) (West 2019).

[3] The indictment failed to properly allege a double-enhanced felony because it alleged two prior felony convictions that occurred on the same day. *See Myhand v. State*, No. 03-09-00488-CR, 2010 Tex. App. LEXIS 6358, at *4 (Tex. App.—Austin Aug. 4, 2010, pet. ref'd) (mem. op., not designated for publication). The State attempted to remedy this problem by subsequently filing *State's Notice of Intent to Use Prior Convictions for Enhancement of Punishment* alleging the two prior felony convictions offered into evidence during the punishment phase of trial.

*whether the State has sustained its burden* by entering a finding that the enhancement allegation is true or not true"). (Emphasis added).

In the underlying case, the court's charge failed to require a jury finding that the second prior felony conviction was both final and for an offense that occurred subsequent to the first prior felony conviction having become final.[4] As such, the State failed to meet its burden of proof concerning whether the offense was properly double-enhanced. Based on this erroneous punishment charge, the jury assessed Appellant's sentence at fifty years confinement. Accordingly, because the offense was not a properly double-enhanced third degree felony, the punishment assessed exceeded the maximum punishment allowed by law.[5] *See* § 12.42(a).

By a sole issue, Appellant challenges the sufficiency of the evidence to support his conviction and judgment.[6] Although he does not raise an issue addressing the illegal sentence, a void sentence cannot be waived; *Scott v. State*, 988 S.W.2d 947, 948 (Tex. App.—Houston [1st Dist.] 1999, no pet.), and must be reversed even if it is not raised as error on appeal. *Barton v. State*, 962 S.W.2d 132, 139 (Tex. App.—Beaumont 1997, pet.

---

[4] The State did obtain a jury finding that (1) prior to the commission of the primary offense, Appellant had been <u>finally convicted</u> of the felony offense of delivery of a controlled substance and (2) after *the commission* of the offense of delivery of a controlled substance, Appellant had been <u>finally convicted</u> of the felony offense of engaging in organized criminal activity. What the State did <u>not</u> obtain was a jury finding that the second previous felony conviction (engaging in organized criminal activity) was for an offense that occurred subsequent to the first previous felony conviction (delivery of a controlled substance) having become *final*.

[5] An offense "punished as" a higher offense raises the level of punishment, not the degree of the offense. *Oliva v. State,* 548 S.W.3d 518, 526-27 (Tex. Crim. App. 2018).

[6] Originally appealed to the Tenth Court of Appeals, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Tenth Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

ref'd). We affirm Appellant's conviction; however, we reverse the judgment and remand the cause to the trial court for a new hearing on punishment.

## BACKGROUND

In 2006, pursuant to a plea agreement, Appellant was convicted of sexual assault and sentenced to five years confinement. Upon his release from prison in August 2011, he submitted his sex offender registration as required by chapter 62 of the Texas Code of Criminal Procedure. At the time, he moved in with his sister who lived in a family-owned house in Caldwell, Texas. Three years later, pursuant to a sex offender compliance check, an investigator with the Texas Department of Public Safety, Robert Neuendorff, attempted to locate Appellant at his registered address in Caldwell on October 29, 2014.[7] When he arrived, he observed that the structure at that address had burned down and was uninhabitable. Based on the condition of the house, Neuendorff began surveillance to determine where Appellant was residing.

On that same day, Neuendorff saw three vehicles on the Caldwell property. One of the vehicles, an SUV, was covered by a tarp. Neuendorff peeked through a hole in the tarp and did not see any signs that a person was living in the SUV. He canvassed the neighborhood and spoke with a distant cousin of Appellant's who would come by daily to care for an elderly relative who was Appellant's neighbor. She told Neuendorff that she saw Appellant "come and go once [sic] a while, but he didn't live there" after the house burned down. Neuendorff did not see Appellant at the registered address on that day.

---

[7] Neuendorff testified that Appellant was selected for a compliance check because he had not updated his driver's license to reflect that he was a registered sex offender upon being released from prison.

4

On November 4, 2014, Neuendorff again went to the Caldwell address and did see Appellant tending to his animals. He did not, however, alert Appellant to his presence. He noticed that Appellant was in a different vehicle than those that were usually parked on the property. When Appellant left, Neuendorff followed him to an address outside the city limits in Tunis, Texas. Neuendorff made another visit to the Caldwell address on November 19th and did not see Appellant there. This time he did encounter a gentleman in the neighborhood and inquired about Appellant. The gentleman was Appellant's cousin and neighbor. He told Neuendorff that after the fire, Appellant came by the Caldwell address "off and on, but he don't live with us." The gentleman believed Appellant was living with his girlfriend. He mentioned that Appellant was at the Caldwell address daily to feed his dogs and tend to other animals and would sometimes sleep in his vehicle, on the premises, at night.

Based on his investigation, Neuendorff began surveillance of the Tunis address and Appellant became suspicious that someone was following him. On November 22, 2014, Neuendorff made a final visit to the Caldwell address but did not see Appellant there on that day. Two days later, Neuendorff concluded that Appellant was not in compliance with his sex offender registration requirements for failing to timely inform his primary registration authority of a change of address. Appellant was arrested on November 25th and Neuendorff conducted a custodial interrogation.

During the interrogation, Appellant claimed the Caldwell address was still his residence. Despite the structure having burned down, he claimed he was living in one of the vehicles located on his property and that he visited his girlfriend's Tunis address for meals and for personal hygiene reasons. He admitted the vehicle he had been driving

5

belonged to his girlfriend and that he sometimes visited the Tunis address. But he claimed he regularly slept in one of his vehicles at the Caldwell address between 3:00 a.m. and 7:00 a.m. because his girlfriend's grandmother did not want him staying at the Tunis address.[8]

Following a jury trial, Appellant was convicted and sentenced to fifty years confinement. By a sole issue, he challenges the sufficiency of the evidence to support his judgment and conviction.

### STANDARD OF REVIEW—SUFFICIENCY OF THE EVIDENCE

The only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *See Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). We consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

We give deference to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). Each

---

[8] Neuendorff testified he did not conduct surveillance of the Caldwell address during those early morning hours.

fact need not point directly and independently to the appellant's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.*

We compare the elements of the offense as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). In our review, we must evaluate all of the evidence in the record, both direct and circumstantial and whether properly or improperly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume the fact finder resolved the conflicts in favor of the prosecution and defer to that determination. *Jackson*, 443 U.S. at 326.

### APPLICABLE LAW

A person who has a "reportable conviction" is required to register with the local law enforcement authority in any municipality or county where that person resides or intends to reside for more than seven days. TEX. CODE CRIM. PROC. ANN. art. 62.051(a) (West 2018). One of the required items on the registration form is the address at which the person resides or intends to reside or, if the person does not reside or intend to reside at a physical address, a detailed description of each geographical location at which the person resides or intends to reside. *Id.* at art. 62.051(c). A person required to register pursuant to chapter 62 of the Texas Code Criminal Procedure is also required to periodically verify his registration information as a sex offender. *Id.* at art. 62.058(a). In addition, if a person required to register intends to change his address, he must report to the appropriate authority his anticipated move date and new address. *Id.* at 62.055(a).

Furthermore, if a person required to register changes his address, he must report in person to the appropriate authority in the municipality or county in which his new address is located and provide that authority proof of identity and proof of residence. *Id.*

A person commits an offense if he is required to register under chapter 62 and fails to comply with any requirement of that chapter. *Id.* at art. 62.102(a). *See also Rogers v. State*, No. 10-11-00252-CR, 2012 Tex. App. LEXIS 10384, at *3 (Tex. App.—Waco Dec. 13, 2012, pet. ref'd) (mem. op., not designated for publication). The statute is a generalized "umbrella" statute that criminalizes the failure to comply with any of the registration requirements set out in chapter 62. *Robinson v. State*, 466 S.W.3d 166, 170 (Tex. Crim. App. 2015); *Young v. State*, 341 S.W.3d 417, 425 (Tex. Crim. App. 2011).

### ANALYSIS

Appellant stipulated to his 2006 conviction for sexual assault. As a result of that conviction, Appellant is a person required to comply with the registration requirements of chapter 62. In challenging the sufficiency of the evidence to support his conviction for failure to comply with those registration requirements, Appellant posits that he is "not required to spend every spare moment and every night at their [sic] registered address." Essentially, he asserts that the evidence fails to establish that he did not "reside" at his registered address, notwithstanding the fact that the residence located at that address had burned down.

Nancy Green, an administrative assistant with the Caldwell Police Department who managed sex offender registrations, testified that she began supervising Appellant's annual verifications in 2012. She explained that the annual verification process required

the offender to initial all stipulations on the verification form to indicate he had read and understood them. She testified that Appellant was aware of the requirements of registration.

On April 7, 2014, Appellant verified his registration. He reported his address as the Caldwell location. He initialed the "status change" section which details how to report, among other information, a change of address.[9] He also initialed the "visiting locations" section which provides how to report if a registrant is going to be visiting a location for more than forty-eight consecutive hours.[10]

On October 29, 2014, the alleged date of the offense, the Caldwell location was listed as Appellant's registered address. It was not until November 24, 2014, after Appellant suspected he was being investigated, that he mentioned to Green his intention to move to Tunis. He was arrested the next day.

Statements obtained from Appellant's neighbors and relatives indicated that after the fire, Appellant was not residing at the Caldwell address. One of the witnesses who gave Neuendorff her statement testified at trial that she would arrive at Appellant's neighbor's house every day around eight in the morning and would stay until noon to care

---

[9] The form tracks article 62.055(a) which provides that a person subject to chapter 62 who intends to change address shall, not later than the seventh day before the intended change, report to the primary registration authority the anticipated move date and new address. TEX. CODE CRIM. PROC. ANN. art. 62.055(a) (West 2018).

[10] The form tracks article 62.059(a) which provides that a person subject to chapter 62 who on at least three occasions during any month spends more than forty-eight consecutive hours away from the registered address shall report that fact. TEX. CODE CRIM. PROC. ANN. art. 62.059(a) (West 2018).

for the elderly neighbor. She testified that she saw Appellant come and go but did not believe he lived at the Caldwell address.

Appellant's sister, who had lived at the Caldwell address with Appellant, but who moved after the fire, testified that Appellant did not move in with her because the Caldwell address was his registered address. Another defense witness, the executive director of the Burleson County Health Resource Center, testified that after Appellant's house burned down, he stayed with his pastor for a few days and was provided some support by the American Red Cross. The director testified that Appellant looked into federal assistance by applying for a housing voucher. However, on cross-examination, he testified the application for a housing voucher was only in Appellant's girlfriend's name.

The jury, as the trier of fact, was the sole judge of the credibility of witnesses and the weight to be given to their testimony. *Thomas*, 444 S.W.3d at 10. Here, the witnesses presented conflicting testimony. The State's witnesses testified that Appellant no longer resided at the Caldwell address after the fire and that he had moved to Tunis to live with his girlfriend without timely reporting a change of address to the proper law enforcement authority. The defense's theory was that Appellant continued to reside at the Caldwell address after the fire, albeit in a vehicle. Ultimately, the jury believed the State's witnesses and resolved any conflict in the testimony against Appellant.

Accordingly, we agree with the State that we need not decide whether sleeping in a vehicle on the registered property can comply as a residence for purposes of the registration requirements because the jury rejected Appellant's claim that property

10

constituted his "residence." As such, we conclude the evidence is sufficient to support Appellant's conviction. Issue one is overruled.

### PUNISHMENT ERROR

As we noted in our introductory paragraphs, Appellant was assessed a sentence in excess of the maximum punishment allowed by law. "A sentence that is outside the maximum or minimum range of punishment is unauthorized by law and therefore illegal." *Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003). An illegal sentence is a void sentence and must be reversed. *Farias v. State*, 426 S.W.3d 198, 200 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (citing *Hern v. State*, 892 S.W.2d 894, 896 (Tex. Crim. App. 1994) (finding that a sentence outside the statutory range of punishment for an offense is void and must be reversed)). Within the *Marin*[11] rubric, an accused has an "absolute and non-waivable" right to be sentenced within the proper range of punishment established by the Legislature, the contravention of which can be raised at any time. *Gutierrez v. State*, 380 S.W.3d 167, 175 (Tex. Crim. App. 2012). Also, this court is authorized to review "unassigned error"—a claim that was preserved at trial but was not raised on appeal.[12] *Sanchez v. State*, 209 S.W.3d 117, 120-21 (Tex. Crim. App. 2006). Because the sentence in this case, fifty years confinement, exceeds the maximum punishment allowed by law according to the verdict returned in this case, the sentence is void. Having found the evidence sufficient to support Appellant's conviction, we

---

[11] *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993). In *Marin,* for the purpose of determining when procedural default rules applied, the Texas Court of Criminal Appeals identified three distinct kinds of error.

[12] During the State's closing argument, when the prosecutor addressed the prior felony convictions, she stated, "[t]hat is not a date that the State has to prove exactly." Defense counsel objected to the comment as a misstatement of law and added, "[t]hey pled it. They have to prove it." In sustaining defense counsel's objection, the trial court announced, "[t]he jury has to follow the charge as given by the Court."

nonetheless reverse his sentence and remand this cause to the trial court for a new punishment hearing.

**CONCLUSION**

The trial court's judgment pertaining to Appellant's conviction is affirmed. That portion of the judgment pertaining to punishment is reversed and the cause is remanded to the trial court for a new punishment hearing.


Patrick A. Pirtle
Justice


Do not publish.