William Eugene LANE, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 05–96–00878–CR to 05–96–00880–CR.

Court of Appeals of Texas, Dallas.

July 17, 1998.

Howard Law, Dallas, for appellant.

Anne Wetherholt, Asst. Dist. Atty., Dallas, for state.

Before LAGARDE, WHITTINGTON and ROACH, JJ.

## OPINION ON RECONSIDERATION ON PETITION FOR DISCRETIONARY REVIEW

LAGARDE, Justice.

This Court's opinion of June 4, 1998 is withdrawn, and the following is now the opinion of this Court. We also vacate our previous judgment. *See* TEX.R.APP. P. 50.

William Eugene Lane appeals from convictions for possession of methamphetamine with intent to deliver (No. 05–96–00878–CR), possession of methamphetamine (No. 05–96–00879–CR), and possession of amphetamine with intent to deliver (No. 05–96–00880–CR).

Appellant pleaded guilty to the charges and, pursuant to a plea bargain, the trial court sentenced appellant to fifteen years' imprisonment. The drugs in question were seized pursuant to two separate search warrants executed at appellant's residence on different dates. Appellant brings the same two points of error in each case.

In the first point, appellant contends that the searches violated his rights under article one, section nine of the Texas Constitution and articles 1.06, 18.01, and 38.23 of the code of criminal procedure. TEX. CONST. art. I, § 9; TEX.CODE CRIM. PROC. ANN. arts. 1.06, 18.01, 38.23 (Vernon 1977 & Supp.1998). In his second point of error, appellant contends that the searches violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution. U.S. CONST. amends. IV, XIV. We overrule both points of error in each case and affirm the trial court's judgments.

## BACKGROUND

On January 14, 1993, the police searched appellant's residence pursuant to a search warrant asserting that appellant was in possession of and was manufacturing methamphetamine. The police found amphetamine, methamphetamine, several small marijuana plants, and equipment for cultivating marijuana.

On about August 9, 1993, and on August 16, 1993, the police received complaints that appellant was growing marijuana. On August 19, 1993, police officers saw a large potted marijuana plant on appellant's front porch. The police obtained a search warrant on August 19, 1993 and, on August 20, 1993, searched the residence. The police found marijuana and methamphetamine.

Appellant filed a motion to suppress asserting that the affidavits did not show probable cause for the issuance of the search warrants. After the trial court denied the motion to suppress, appellant pleaded guilty in each case pursuant to a plea bargain. The trial court sentenced appellant in accordance with the plea bargains. Appellant filed a

notice of appeal in each case complying with rule of appellate procedure 25.2(b)(3) and former rule of appellate procedure 40(b)(1). *See* TEX.R.APP. P. 25.2(b)(3); TEX.R.APP. P. 40(b)(1) (former rules).

## STANDARD OF REVIEW OF A TRIAL COURT'S ORDER ON A MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO A SEARCH WARRANT

Appellant contends that the trial court erred in overruling his motion to suppress because the search warrants were not supported by probable cause. Before discussing appellant's arguments, we must first determine the proper standard of appellate review of a trial court's order on a motion to suppress evidence seized pursuant to a search warrant.

### Warrant Versus Warrantless Searches

■ The standards of review for warrant and warrantless searches have developed independently in federal case law. Because the Fourth Amendment strongly prefers searches to be conducted pursuant to search warrants, the United States Supreme Court, through precedent, provides incentives for law enforcement officials to obtain warrants instead of conducting warrantless searches. One of the incentives is a less strict standard of reviewing the propriety of a search conducted pursuant to a warrant. *See Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996). When reviewing a trial court's order on a motion to suppress evidence obtained through a warrantless search, the appellate court gives no deference to the trial court's *determination of probable cause,* but instead, determines the substantive issue independently, or *de novo. See Ornelas,* 116 S.Ct. at 1663.[1] When determining a motion to suppress evidence seized through execution of a search warrant, however, courts, including the trial court, cannot review the substantive issue independently or *de novo* but must give great deference to the magistrate's probable cause *determination* to is-

---

1. Of course, if an evaluation of credibility or demeanor is involved, deference is given to the trial court's fact findings unless clearly erroneous. *Ornelas,* 116 S.Ct. at 1663, 517 U.S. 690.

sue a warrant. *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The Supreme Court recognized this distinction in *Ornelas* when it stated:

> The Court of Appeals, in adopting its deferential standard of review here, reasoned that *de novo* review for warrantless searches would be inconsistent with the "great deference" paid when reviewing a decision to issue a warrant, *see Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). We cannot agree. The Fourth Amendment demonstrates a "strong preference for searches conducted pursuant to a warrant," *Gates, supra,* at 236, 103 S.Ct. 2317, and the police are more likely to use the warrant process if the scrutiny applied to a magistrate's probable cause determination to issue a warrant is less than that for warrantless searches. Were we to eliminate this distinction, we would eliminate the incentive.

*Ornelas,* 116 S.Ct. at 1663 (citation omitted).

██ In deciding a motion to suppress evidence seized pursuant to a search warrant, the issue before the trial court is whether the issuing magistrate had a "substantial basis for ... conclud[ing]" that a search would uncover evidence of wrongdoing. Whether the facts alleged in a probable cause affidavit sufficiently support issuance of a search warrant is determined by examining the totality of the circumstances. *Ramos v. State,* 934 S.W.2d 358, 362 (Tex.Crim.App. 1996), *cert. denied,* — U.S. —, 117 S.Ct. 1556, 137 L.Ed.2d 704 (1997). The allegations are sufficient if they would "justify a conclusion that the object of the search is probably on the premises." *Id.* at 363 (quoting *Cassias v. State,* 719 S.W.2d 585, 587 (Tex.Crim.App.1986)). The trial court does not review *de novo* the sufficiency of an affidavit to support a search warrant but shows great deference to the magistrate's decision. *Gates,* 462 U.S. at 236, 103 S.Ct.

2317; *Ramos,* 934 S.W.2d at 363. The trial court's duty "is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed," *i.e.,* that there was a "fair probability" contraband would be found at the place named in the warrants. *Gates,* 462 U.S. at 238–39 (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)); *see Johnson v. State,* 803 S.W.2d 272, 289 (Tex.Crim.App.1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991).

## De Novo Review

In *Guzman v. State,* 955 S.W.2d 85 (Tex. Crim.App.1997), the court of criminal appeals clarified the standard of review to be used by appellate courts in reviewing a trial court's order on a motion to suppress evidence obtained through a search incident to a warrantless arrest. *See id.* at 87–89. In *Loserth v. State,* 963 S.W.2d 770 (Tex.Crim. App.1998), the court of criminal appeals stated that *Guzman* applied to all motions to suppress evidence based upon Fourth Amendment claims as well as other claims.[2] *Id.* at 771.

In *Guzman,* the court of criminal appeals explained that the standard of appellate review depends on the type of question presented. It recognized three types of questions: (1) historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor; (2) application of law to fact questions, *i.e.,* mixed questions of law and fact, when the ultimate resolution of those questions turns on an evaluation of credibility and demeanor; and (3) mixed questions of law and fact when the resolution of those questions does not turn on an evaluation of credibility and demeanor. *See Loserth,* 963 S.W.2d at 772; *Guzman,* 955 S.W.2d at 89. In reviewing the first two

---

2. The court held that the *Guzman* standard applied to "motion[s] to suppress evidence based upon a claim that an in-court identification should not have been admitted due to taint by an impermissibly suggestive pretrial identification procedure, in violation of the defendant's due process rights under the Fourteenth Amendment." *Loserth,* 963 S.W.2d at 771. The court did not explain its reasons for applying *Guzman* outside the warrantless arrest context, nor did it place any limits on the applicability of *Guzman* to motions to suppress evidence of any type for any reason. It would appear that the court of criminal appeals intends *Guzman* to be the standard of appellate review of all orders on motions to suppress.

types of questions, an appellate court shows "almost total deference" to a trial court's determination because of a trial court's exclusive fact-finding role and because a trial court is in an appreciably better position to decide the issue. *Guzman*, 955 S.W.2d at 89. In reviewing the third type of question, where the resolution of the issue does not turn on an evaluation of credibility and demeanor, an appellate court is in as good a position to review the issue as the trial court; therefore, an appellate court determines the issue independently, or *de novo*. *Id.* In *Guzman*, the court of criminal appeals held that the issue of whether an officer had probable cause to arrest a suspect without a warrant, under the totality of the circumstances, was a question of the third type. *Id.* at 87.

▇ Applying *Guzman's* general standard of review to an order on a motion to suppress evidence seized pursuant to a search warrant, the issue before the trial court is the propriety of the magistrate's determination that there is probable cause to issue the search warrant. When this issue is determined by the trial court reviewing the same affidavit considered by the magistrate in deciding whether to issue the warrant, as it was in these cases, resolution of a motion to suppress evidence seized pursuant to a search warrant does not turn on an evaluation of credibility and demeanor, thus the issue also falls within the third type of question under *Guzman*. Therefore, we determine independently, or *de novo*, the issue before the trial court, *i.e.*, whether the magistrate, viewing the totality of the circumstances, had a substantial basis for concluding that a search would uncover evidence of wrongdoing.

In determining *de novo* the issue *before the trial court*, we do not, however, determine independently, or *de novo*, the substantive issue that was *before the magistrate* at the time of the issuance of the warrant. *Gates* strictly prohibits such a review. *See Gates*, 462 U.S. at 236, 103 S.Ct. 2317.[3] Instead, giving great deference to the magistrate's decision to issue the warrant, we determine whether, considering the totality of the circumstances, the magistrate had a substantial basis for concluding probable cause existed. *See id.* at 238–39, 103 S.Ct. 2317. This deferential, or less strict, standard of review of a magistrate's probable cause determination promotes the Supreme Court's stated policy of preserving the incentive to peace officers to obtain a warrant instead of conducting warrantless searches. Applying those standards, we consider appellant's points of error.

## APPELLANT'S POINTS OF ERROR

In each case, appellant presents the same two points of error. In the first point of error, appellant contends that the searches violated appellant's rights under the Texas Constitution and the code of criminal procedure; in the second point of error, appellant contends that the searches violated his rights under the federal constitution. Although he presents his federal and state grounds in separate arguments, appellant fails to show a distinction between them. Accordingly, we will consider the state and federal grounds to be the same and consider them together. *See Arnold v. State*, 873 S.W.2d 27, 29 n. 2 (Tex.Crim.App.1993), *cert. denied*, 513 U.S. 830, 115 S.Ct. 103, 130 L.Ed.2d 51 (1994);

---

3. The Beaumont court of appeals apparently found the standards of review in *Guzman* and *Gates* to be inconsistent. *See Barton v. State*, 962 S.W.2d 132, 137 (Tex.App.—Beaumont 1997, pet. ref'd). The court concluded that *Guzman's* *de novo* review did not apply to review of a motion to suppress evidence seized pursuant to a search warrant and applied an abuse-of-discretion standard of review. *Id.* We agree that neither *Guzman* nor *Ornelas* involved a warrant. *See Ornelas*, 116 S.Ct. at 1659–60; *Guzman*, 955 S.W.2d at 86. However, our determining the motion to suppress *de novo* is compatible with *Gates* because, in our independent, or *de novo*, determination of the issue before the trial court,

we must apply a deferential standard of review to the magistrate's decision.

The Beaumont court appears to believe that applying *Guzman* would require it to decide the issue before the *magistrate de novo*. *See Barton*, 962 S.W.2d at 137. Nothing in *Guzman* indicates that to be the case. In deciding the issue before the trial court *de novo*, the appellate court applies the standard of review required of the trial court; in reviewing the sufficiency of probable cause for a search warrant, that standard is consideration of the totality of the circumstances giving great deference to the magistrate's decision. *See Gates*, 462 U.S. at 236, 238, 103 S.Ct. 2317.

*Muniz v. State,* 851 S.W.2d 238, 251 (Tex. Crim.App.), *cert. denied,* 510 U.S. 837, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993).

### JANUARY 14, 1993 SEARCH

In cause numbers 05–96–00879–CR and 05–96–00880–CR, appellant asserts the affidavit supporting the January 14, 1993 search warrant does not show probable cause. That affidavit states, in pertinent part:

> On January 13, 1993, the Mesquite Police Narcotics Section executed a narcotics search warrant at 1308 Highland Street.... Investigators recovered approximately 37 grams of methamphetamine along with cocaine and marijuana. The residents of this location were placed in custody and transported to Mesquite City Jail. During a debriefing of one of the residents, Donald Ray Johnson ... gave Investigator D.L. Ward ... a voluntary written statement. In this statement, Johnson advises that he has personally known the [s]aid William Lane for approximately one and a half years. During this period of time Johnson and Lane together have been cooking methamphetamine inside the place and premises.... Johnson further states that Lane would cook the methamphetamine, Johnson would sell the finished product. Johnson advises that on January 13, *1992* prior to the search warrant being executed at his residence, he was inside the place and premises described ... above, and that the [s]aid William Lane was currently in the cooking process. Johnson states that the [s]aid William Lane had concluded the first portion of the cook process, and was supposed to start the powdering process late during the night of the 13th. Johnson states that the laboratory equipment was setup [sic] in the garage of the place and premises described [above].

(Emphasis added.)

Appellant contends the affidavit shows the information that appellant was in possession of methamphetamine on January 14, 1993 was stale because it showed appellant may have possessed methamphetamine on January 13, 1992, more than a year before the

January 14, 1993 affidavit. Thus, argues appellant, the affidavit is insufficient.

■ In determining the sufficiency of an affidavit for an arrest or search warrant, a reviewing court is limited to the "four corners of an affidavit." *Jones v. State,* 833 S.W.2d 118, 123 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 678 (1993). This determination, however, is not meant "to place legalistic blinders on the process wherein a neutral and detached magistrate must decide whether there are sufficient facts stated to validate issuance of a proper warrant." *Id.* at 123–24 (quoting *Lagrone v. State,* 742 S.W.2d 659, 661 (Tex.Crim.App.1987)). Instead, warrant affidavits should be interpreted in a common sense and realistic manner, and the reviewing magistrate is permitted to draw reasonable inferences. *Id.* at 124.

■ The issue, then, is whether the magistrate, viewing only the four corners of the affidavit, interpreting the affidavit "in a common sense and realistic manner," and drawing all reasonable inferences, could conclude that the date "January 13, 1992" was in error and was intended to be "January 13, 1993." Having reviewed the affidavit, we believe the magistrate could do so.

The affiant states that on January 13, 1993, he interviewed Johnson who told him that "on January 13, 1992, prior to the search warrant being executed at his residence, he was inside [appellant's residence] and that [appellant] was currently in the cooking process. Johnson states that [appellant] had concluded the first portion of the cook process, and was supposed to start the powdering process late during the night of the 13th." This excerpt contains several indications permitting the magistrate to reasonably infer that the date "January 13, 1992" was a typographical error and that the correct date was January 13, *1993.*

The first indication is the statement "on January 13, 1992, *prior to the search warrant being executed at his residence.*" The affidavit states that the search warrant for Johnson's residence was executed on January 13, 1993. January 13, 1992 is necessarily prior to January 13, 1993. There would be no

need to specify that the events to be described occurred prior to the search of Johnson's residence unless they occurred on the same day, that is, January 13, *1993.*

The next indication is the affiant's statement that Johnson told him "[appellant] *was currently* in the cooking process." The magistrate could reasonably read this phrase as stating that Johnson told the police that he was in appellant's residence, and appellant "was currently," that is, at the time Johnson was being interviewed, "in the cooking process." Thus, the trial court could reasonably infer that the date Johnson was in appellant's residence was January 13, 1993.

The next indication is the affiant's statement that Johnson told him that appellant "was supposed *to start* the powdering process on the night of the 13th." The affidavit was prepared on January 14, 1993. The affiant uses the past tense "was" because the time at which the powdering process was supposed to have begun was before the affidavit was prepared. However, the affiant describes Johnson's statement on January 13, 1993 as telling him the powdering process was "to start" on the night of the 13th. This phrasing informed the magistrate that at the time Johnson gave his statement, the powdering process had not yet begun. If Johnson intended to inform the affiant that the powdering process began before he gave his statement, he would have told them that the powdering process, "was supposed *to have started* on the night of the 13th." Therefore, the magistrate could reasonably infer from the January 14, 1993 affidavit that on the previous day, January 13, 1993, Johnson gave a statement in which he told the officers that appellant would start the powdering process for methamphetamine that night, January 13, 1993.

The final indication is the fact that the affidavit was prepared in the first half of the month of January. The trial court could consider the common mistake of incorrectly writing the previous year when writing dates early in the new year.

Considering only the four corners of the affidavit, interpreting the affidavit in a common sense and realistic manner, and drawing reasonable inferences, we conclude that the magistrate could have reasonably considered the date "January 13, 1992" to be a typographical error and could have concluded that the intended date was "January 13, 1993."

Viewing the totality of the circumstances, including Johnson's statement that on January 13, 1993, appellant was in the process of manufacturing methamphetamine using laboratory equipment located in the garage of the premises and would begin the powdering process late during the night of January 13, 1993, and giving great deference to the magistrate's decision, we conclude that the magistrate had a substantial basis for concluding that on January 14, 1993· there was a fair probability that methamphetamine was inside the premises. We hold that the trial court did not err in denying appellant's motion to suppress. We overrule his points of error in cause numbers 05–96–00879–CR and 05–96–00880–CR.

## AUGUST 20, 1993 SEARCH

In cause number 05–96–00878–CR, appellant asserts that the affidavit supporting the August 19, 1993 search warrant does not show probable cause to search. In the affidavit, the affiant, David Ward, identified the location to be searched, stated it was in the charge of and controlled by appellant and his codefendant, Lori Denise Roundtree, and stated he believed they possessed marijuana at that location. Ward based this belief on the following facts:

Ward received information on August 16, 1993 that Roundtree and Lane were growing marijuana at the location. The police had received a similar complaint about a week before August 16, 1993.

Ward drove past the location between August 16 and 19, 1993 on several occasions but did not see any marijuana plants.

On August 19, 1993, Ward drove past the location and saw a potted marijuana plant set outside the house on a rail just in front of the front door.

"Due to the fact that marijuana has not been observed until August 19, 1993 the plants may be being moved in and out of

the residence ... for sunlight and security of the plants."

During the January 14, 1993 search, the police recovered marijuana plants and cultivation equipment as well as a working methamphetamine lab and a substantial amount of methamphetamine.

Appellant has four previous arrests on narcotics charges, and Roundtree has one previous arrest on a narcotics charge.

"Your Affiant has had training and experience in narcotic[s] investigations. It has been your Affiant's experience that persons who cultivate marijuana use drying areas inside a covered area for the purpose of drying out the marijuana to be smoked. These areas have been sheds or inside the residence [in] which the persons live. It is also common to find larger and smaller plants inside these areas, either waiting to be planted outdoors or the plants have been potted for growing inside the residence and/or outbuildings located on the curtilage thereof. Therefore, your Affiant believes that the said William Eugene Lane and Lorie [sic] Denise Roundtree ... are currently and knowingly in possession of ... marijuana at the place and premises described ... above."

Appellant asserts that all references to the January 14, 1993 search must be excised because that information is the fruit of an illegal search. However, as discussed above, the January 14, 1993 search was not illegal. Appellant's argument lacks merit.

■ Some of the underlying circumstances of which the magistrate was informed through the affidavit at the time of the issuance of the search warrant were: Complaints about marijuana being grown at the named location, the presence of the marijuana plant in front of the house, the January 14, 1993 search involving discovery of several marijuana plants and cultivation paraphernalia, and appellant's history of drug arrests. Applying a totality-of-the-circumstances analysis to those facts in reviewing the magistrate's probable cause determination, and giving great deference to the magistrate's determination, we conclude the magistrate had a substantial basis for his decision that there was a fair probability marijuana was inside appellant's house. Therefore, the trial court did not err in denying the motion to suppress. We overrule both points of error in cause number 05–96–00878–CR.

We affirm the trial court's judgments.