Opinion issued December 31, 2002 















In The

Court of Appeals

For The

First District of Texas






NO. 01-01-00713-CR






BILLY DEWAYNE WILSON, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 208 District Court

Harris County, Texas

Trial Court Cause No. 861237






O P I N I O N

 After his motion to suppress evidence was denied, appellant, Billy Dewayne
Wilson, pleaded guilty, without an agreed punishment recommendation, to possession
with intent to deliver cocaine weighing at least 400 grams. The trial court found
appellant guilty and assessed punishment at 15 years' confinement. Appellant
contends the trial court erred by denying his motion to suppress evidence seized from
his co-defendant's hotel room. The State, however, contends that appellant has no
standing to object to the search. We affirm.

Facts

 The following facts are derived from a search warrant affidavit executed by
Houston Police Officer J.F. Boody. Officer S. Januhowski of the Houston Police
Department Narcotics Division received information that Renita M. Baldwin was
transporting drugs from Houston to Alabama twice a month. Thereafter, Officer
Januhowski set up surveillance of Baldwin at a motel room where she had been
staying with appellant. While watching the couple, the police saw a man, presumably
appellant, arrive at the hotel room and enter with a bulky object under his arm. The
object was covered with a leather jacket, and when appellant left the room a short
time later, the leather jacket was hanging loosely from his arm.

 Officer Januhowski called Officer M.E. Smith and asked that Smith's narcotics
detection canine, Gruffy, inspect the doors of rooms 102-111. Gruffy altered on only
one room--number 109--the room in which Baldwin and appellant had been staying. Armed with this information, the officers obtained a search warrant for room
109. Inside the room, the police discovered the cocaine and arrested appellant and
Baldwin.

Standing

 The State contends that appellant has no standing to object to the search of the
hotel room because the room was registered to appellant's co-defendant, Renita
Baldwin. We disagree.

 An accused has standing to contest a search under the Fourth Amendment only
if he had a legitimate expectation of privacy in the place that government officials or
agents invaded. Rakas v. Illinois, 439 U.S. 128, 144, 99 S. Ct. 421, 430 (1978);
Granados v. State, No. 73,525, slip op. at 6 (Tex. Crim. App. May 8, 2002). A
defendant, who bears the burden of demonstrating a legitimate expectation of privacy,
can do so by showing that he had a subjective expectation of privacy in the place
invaded that society is prepared to recognize as reasonable. Smith v. Maryland, 442
U.S. 735, 740, 99 S. Ct. 2577, 2580 (1979); Katz v. United States, 389 U.S. 347, 361,
88 S. Ct. 507, 516 (1967) (Harlan, J., concurring); Granados, slip op. at 6. In
determining whether a defendant's claim of privacy is objectively reasonable we may
consider whether (1) the defendant had a property or possessory interest in the place
searched; (2) he was legitimately in the place searched; (3) he had complete dominion
or control and the right to exclude others; (4) prior to the intrusion, he took normal
precautions customarily taken by those seeking privacy; (5) he put the place to some
private use; and (6) his claim of privacy is consistent with historical notions of
privacy. Granados, slip op. at 6; Villarreal v. State, 935 S.W. 2d 134, 138 (Tex.
Crim. App. 1996).

 The State, citing Clapp v. State, argues that appellant had no standing to object
to the search of Renita Baldwin's hotel room because he was not the registered guest. 
See 639 S.W.2d 949, 952-53 (Tex. Crim. App. 1982). In Clapp, the police went to
a hotel room registered to Susan Otts to execute an arrest warrant for Joel Hamm. Id.
at 952. Otts gave the police permission to search the suite for Hamm. Id. As one of
the officers was searching the suite, he encountered the appellant, Clapp. Id. Clapp
accompanied the officer as he searched the rest of the suite. Id. One bedroom
appeared to be unoccupied, but the bed in the second bedroom was unmade and
Clapp's watch was on the dresser. Id. While the officer was checking the second
bedroom, he heard water running in the adjoining bathroom. Id. When the officer
entered the bathroom, he saw two tinfoil packets, later determined to contain
narcotics, swirling in the toilet bowl. Id. at 952-53. The officer retrieved the packets
and arrested Clapp for possession of amphetamine. Id. The Court of Criminal
Appeals held that Clapp did not have standing to object to the search because the
evidence showed that "he was merely a guest in Ott's motel room." Id. at 953.

 However, the Clapp opinion was decided before the United States Supreme
Court decision in Minnesota v. Olson, 495 U.S. 91, 98, 110 S. Ct. 1684, 1689 (1990).

In Minnesota v. Olson, the Supreme Court held that an overnight guest has a
legitimate expectation of privacy in his host's home. 495 U.S. at 138-39. In so
holding, the Court stated:

 From the overnight guest's perspective, he seeks shelter in another's
home precisely because it provides him with privacy, a place where he
and his possessions will not be disturbed by anyone but his host and
those his host allows inside. We are at our most vulnerable when we are
asleep because we cannot monitor our own safety or the security of our
belongings. It is for this reason that, although we may spend all day in
public places, when we cannot sleep in our own home we seek out
another private place to sleep, whether it be a hotel room, or the home
of a friend. 


 . . . . 


 That the guest has a host who has ultimate control of the house is not
inconsistent with the guest having a legitimate expectation of privacy. 
The houseguest is there with the permission of his host, who is willing
to share his house and his privacy with his guest.


495 U.S. at 99, 110 S. Ct. at 1689.


 We are aware that in Minnesota v. Olson, the defendant was an overnight guest
in someone else's home; whereas in this case, the defendant is the overnight guest in
the hotel room of a registered guest. Nevertheless, we believe the reasoning of
Minnesota v. Olson is equally applicable in this situation. The Supreme Court has
recognized that a registered guest at a hotel has a reasonable expectation of privacy
in the room that he or she has rented and, consequently, is entitled to constitutional
protection against unreasonable searches and seizures there. See Stoner v. California,
376 U.S. 483, 490 (1964). We believe the rationale behind Minnesota v. Olson
compels the conclusion that an overnight guest of a registered hotel guest shares the
registered guest's reasonable expectation of privacy in the room. (1)

 While this is a novel issue for this Court, it has been addressed by other
jurisdictions. See United States v. Wilson, 36 F.3d 1298, 1303 (5th Cir. 1994)
(holding that overnight guest of hotel resident had standing to object to search of
hotel room); United States v. Gordon, 168 F.3d 1222, 1226 (10th Cir. 1999)
(recognizing that registered occupant of hotel room or overnight guest of registered
occupant have standing to object to search); United States v Carr, 939 F.2d 1442,
1446 (10th Cir. 1991) (holding defendant had no standing to object to search of hotel
room absent evidence showing that he was overnight guest of registered guest);
Johnson v. Nagle, 58 F. Supp.2d 1303, 1379 (N.D. Ala. 1999) (holding overnight
guest of registered hotel guest had standing to object to search of hotel room); People
v. Olson, 556 N.E.2d 273, 277 (Ill. App. Ct. 1990) (same); People v. Ali, 131 A.D.2d
857, 858 (N.Y. App. Div. 1987) (holding co-occupant with registered hotel guest
shared reasonable expectation of privacy in hotel room); State v. McMillian, 557
S.E.2d 138, 142-43 (N.C. Ct. App. 2001) (holding that absent evidence defendant
planned on staying overnight, he had no standing to object to search of hotel room
registered to another person); State v. Coleman, 693 N.E.2d 825, 525-25 (Ohio Ct.
App. 1997) (holding defendant had no standing to object to search of hotel room
because he was not a registered guest or an overnight guest).

 In this case, there was evidence that appellant was traveling with Renita
Baldwin, that Baldwin rented the hotel room in her name, and that appellant shared
the room with Baldwin for two nights. As Baldwin's overnight guest, we hold that
appellant has shown a sufficient possessory interest in the hotel room to give him a
reasonable expectation of privacy, which is consistent with historical notions of
privacy. (2) Therefore, we conclude that appellant has standing to object to the search
of the hotel room registered to Baldwin.

The Motion to Suppress Evidence

 Appellant contends the trial court erred by denying his motion to suppress
evidence because (A) the affidavit supporting the search warrant was inadequate; (B)
the warrant was based on an illegal search by the narcotics-detecting dog; and (C) he
was illegally arrested.

A. The Affidavit

 In points of error one and two, appellant contends the affidavit supporting the
search warrant was inadequate for the following two reasons: (1) its contents are not
based on the affiant's personal knowledge; and (2) the statements in the affidavit are
conclusory.

 A search warrant must be supported by an affidavit setting forth substantial
facts establishing probable cause for its issuance. See Davis v. State, 27 S.W.3d 664,
667 (Tex. App.--Waco 2000, pet. filed); Mayfield v. State, 800 S.W.2d 932, 934
(Tex. App.--San Antonio 1990, no pet.). "Probable cause to support the issuance of
a search warrant exists when the facts submitted to the magistrate are sufficient to
justify a conclusion that the object of the search is probably on the premises at the
time the warrant is issued." Davis, 27 S.W.3d at 667; see also Mayfield, 800 S.W.2d
at 934. We examine the four corners of the affidavit to determine whether probable
cause exists. See Davis, at 667; Mayfield, 800 S.W.2d at 934. "Reasonable inferences
may be drawn from the affidavit, however, and the affidavit must be interpreted in a
common sense and realistic manner." Davis, 27 S.W.3d at 667; see also Mayfield,
800 S.W.2d at 935.

 We review a trial court's ruling on a motion to suppress using the "bifurcated"
standard of review set forth in Guzman v. State, 955 S.W.2d 85 (Tex. Crim. App.
1997). See Burke v. State, 27 S.W.3d 651, 654 (Tex. App.--Waco 2000, pet. ref'd);
Lane v. State, 971 S.W.2d 748, 752 (Tex. App.--Dallas 1998, pet. ref'd). "Thus, we
give almost total deference to the trial court's determination of historical facts that
depend on credibility choices, but review its application of the law of probable cause
de novo." Burke, 27 S.W.3d at 654. Because credibility is not an issue when
reviewing the four corners of an affidavit, we review the trial court's ruling de novo. 
Burke, 27 S.W.3d at 654; Lane, 971 S.W.2d at 752. In conducting this de novo
review, we give great deference to the magistrate's decision to issue the warrant and
determine whether, considering the totality of the circumstances, the magistrate had
a substantial basis for determining that there was probable cause. Lane, 971 S.W.2d
at 752.

 1. Personal knowledge of affiant

 Appellant argues that the affidavit is insufficient because it is not based on the
personal knowledge of the affiant. Specifically, appellant contends that the affiant,
J.F. Boody, a member of the Houston Police Department's Narcotics Division, is not
describing his own observations, but those of another officer, S. Januhowski, and that
the affidavit does not expressly state that the two officers were cooperating together
on the investigation.

 When there has been cooperation between law enforcement agencies or
between members of the same agency, the sum of the information known to the
officers involved is to be considered in determining probable cause. Woodward v.
State, 668 S.W.2d 337, 344 (Tex. Crim. App. 1982). The affidavit in this case
provides that both Officers Januhowski and Boody are members of the Houston
Police Department, and that both are assigned to the Narcotics Division of that
department. The affidavit then details Officer Januhowski's surveillance of appellant
and Baldwin and the narcotics detection dog's alert on the door to their hotel room. 
From this information, the magistrate could reasonably have drawn the inference that
Boody and Junuhowski were cooperating on the case, which would fulfill the
requirement that Boody's affidavit be based on personal knowledge. See United
States v. Ventresca, 380 U.S. 102, 111, 108 85 S. Ct. 741, 747 (1965) (holding that
detailed observations recounted in affidavit were sufficient to support inference that
source of information in affidavit was governmental investigators working on
investigation with affiant); United States v. Reed, 700 F.2d 638, 641 (6th Cir. 1983)
(holding that because information in affidavit was clearly the result of governmental
investigation, personal knowledge of affiant was provided by governmental agents
cooperating on the case). 

 2. Conclusory Statements

 Next, appellant contends that the statements by the affiant, Officer Boody, are
conclusory and, therefore, insufficient to show probable cause. See State v.
Anderson, 917 S.W.2d 92, 95 (Tex. App.--Houston [14th Dist.] 1996, pet. ref'd)
(stating that supporting affidavit must contain more than mere conclusory statements
by affiant). However, conclusory statements do not invalidate a supporting affidavit
if the remaining, non-conclusory portions of the affidavit provide probable cause. See
Massey v. State, 933 S.W.2d 141, 147-48 (Tex. Crim. App. 1996).

 Regardless of any conclusory statements that may have been in the affidavit,
the remaining portions of the affidavit stated, in a non-conclusory manner, that
Officer Januhowski called a canine officer and his narcotics detection dog to the hotel
and that the dog alerted on the door of room 109. This alert by the dog provided
sufficient probable cause. (3) See Harrison v. State, 7 S.W.3d 309 311 (Tex.
App.--Houston [1st Dist.] 1999, pet. ref'd).

 Accordingly, we overrule points of error one and two.

B. Sniff by Narcotics-Detecting Dog

 In points of error four and five, appellant contends the dog sniff at the door of
the hotel room was an illegal search under Kyllo v. United States, 533 U.S. 27, 37,
121 S. Ct. 2038, 2045 (2001). In Kyllo, the police, while standing on a public street,
used a thermal imaging device to determine if the amount of heat emanating from
Kyllo's home was consistent with the type of high-intensity lamps typically used for
growing marihuana indoors. 533 U.S. at 28, 121 S. Ct. at 2038. The Supreme Court
held that this was an unlawful search by stating:

 Where, as here, the Government uses a device that is not in general
public use, to explore details of the home that would previously have
been unknowable without physical intrusion, the surveillance is a
"search" and is presumptively unreasonable without a warrant.


Kyllo, 533 U.S. at 40, 121 S. Ct. at 2046.


 We believe that Kyllo is distinguishable for two reasons. First, unlike the
search in Kyllo, in this case, appellant's home was not involved; instead, the dog
sniffed the exterior door of a room at hotel open to the public. The dog walked along
a passageway that was used by guests to access their rooms. We hold that appellant
had no expectation of privacy in the area exterior to the door of his hotel room.

 Second, expectations differ when certain devices are employed for surveillance
purposes. See United States v. Place, 462 U.S. 696, 706, 103 S. Ct. 2637, 2644
(1983) (recognizing the canine sniff as a relatively unintrusive method of gathering
information due to its limitations in detecting only contraband); Walsh v. State, 743
S.W.2d 687, 689 (Tex. App.--Houston [1st Dist.]1987, pet. ref'd). In Kyllo, the
surveillance device used was a sophisticated piece of technology that revealed
information, other than the presence of contraband, about the interior of Kyllo's
home. See Kyllo, 533 U.S. at 38, 121 S. Ct. at 2045.

 Here, the dog's sniff did not explore the details of the hotel room; the sniff
revealed nothing about the room other than the presence of cocaine. There is no
legitimate expectation or interest in "privately" possessing cocaine. United States v.
Jacobsen, 466 U.S. 109, 113, 104 S. Ct. 1652, 1657 (1984); United States v. Reed,
141 F.3d 644, 650 (6th Cir. 1998).

 Because Kyllo is distinguishable, we hold that a dog sniff of the area exterior
to the door of a hotel room is not a search under the Fourth Amendment (4) or the Texas
Constitution. (5) See Josey v. State, 981 S.W.2d 831, 845 (Tex. App.--Houston [14th
Dist.] 1998, pet. ref'd).

 Accordingly, we overrule points of error four and five.

C. Appellant's Arrest

 In point of error three, appellant contends he was illegally arrested. However, 
even if the arrest was unlawful, we would not reverse because no evidence was
obtained as a result of appellant's arrest. See Ellis v. State, 714 S.W.2d 465, 470
(Tex. App.--Houston [1st Dist.] 1986, pet. ref'd) (stating that unlawful arrest alone
will not invalidate conviction unless fruits of the unlawful arrest were admitted at
trial). The evidence in this case was obtained, not as a result of appellant's arrest, but 
as a result of the search warrant, which we have already held was valid.

 Accordingly, we overrule point of error three.







Conclusion

 We affirm the judgment.




 Sherry Radack

 Chief Justice

Panel consists of Chief Justice Radack and Justices Nuchia and Jennings.

Publish. Tex. R. App. P. 47.
1. ' 
 
 - 
 ' 
 
 
 
 
 ' ' 
2. 
 -' 
 
 
 
' 
 

3. ' 
 
 ' '
 
 
4. 
5. §