COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JAMAR CHARLES HILL, | § | No. 08-07-00212-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 371st District Court |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| Appellee. | § | (TC# 1028525D) |
| | § | |

**O P I N I O N**

This is an appeal from a jury conviction for the offense of aggravated robbery. The jury assessed punishment at thirty years' imprisonment. For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

In the early morning of July 4, 2006, Appellant, his girlfriend Stephanie Washington, and Edward Demond Wilson, were hanging out at Appellant's home and ingesting ecstasy. Appellant and Wilson began talking about robbing the Lucky Spin game room – a business located in Arlington, Texas, and Appellant said he would get his gun.[1]

Washington drove Appellant and Wilson to the Lucky Spin. Appellant brought a black toboggan-type cap with the Dallas Mavericks logo on it, gloves, a blue bandana, and his gun. Wilson also had his weapon, which was not working, and a ski mask. Washington parked in a trailer park about fifty yards from the Lucky Spin, and both men jumped out of the car. Washington remained in the car and heard gunshots.

---

[1] The night manager testified that the robber fired a 9 mm pistol inside the business during the robbery.

Hill entered the game room, pointed his gun at Jeffrey Dean Hamilton, the overnight manager, and asked for money. Hamilton did not comply with the request and reached for Appellant's gun. The gun fired. Hamilton chased Appellant, and Appellant stopped and fired at him once. The chase continued, and Appellant fired two shots into the ceiling. Appellant's toboggan cap fell off as he ran out through the front door. Appellant and Wilson returned to the car, and Washington drove home. Appellant commented to his companions that he did not get any money and he thought he had shot someone. Some days later, Appellant talked about the robbery to Washington. According to Washington, Appellant had nightmares because he thought he had shot the man holding the money, and he worried about getting caught since he had lost the toboggan. Appellant also wrote an inculpatory letter to a friend.

Washington decided to call the police. She talked to Detective Richard Daniel Nutt of the Arlington Police Department. She related the events of the robbery although she left out the fact that she had driven the car. On July 7, 2006, Washington gave Detective Nutt Appellant's gun and the bandana. Detective Nutt obtained a search warrant allowing him to take saliva/buccal samples. Testing found Appellant's DNA could not be excluded from the DNA contributors of the bandana, gun, and toboggan. Ballistics testing showed that Appellant's gun fired the bullet and casing retrieved from the Lucky Spin.

## VALIDITY OF THE SEARCH WARRANT

In Appellant's sole issue on appeal, he complains that the search warrant was invalid due to a lack of probable cause. On July 10, 2006, Detective Nutt signed an "Evidentiary (Body Substances) Search Warrant Affidavit" to obtain DNA samples through saliva/buccal samples. The supporting affidavit alleged that Appellant had committed the offense of aggravated robbery with a deadly weapon on July 4, 2006, in Arlington, Texas, and that Detective Nutt believed Appellant's

DNA constituted evidence of the offense or tended to show that he committed the offense.  The

affidavit read:

>On 07-04-06 at 0404 hours, Arlington Police Officer R. Rodriguez #1104, was dispatched to a robbery report at the Lucky Spin game room at 1851 West Division Street.  Victim employee was identified as Jeffrey Dean Hamilton.
>
>Jeffrey Dean Hamilton advised he was inside the business at approximately 0359 hours emptying money from one of the machines.  Hamilton said a unknown black male, approx 6' 200 lbs, wearing a black knit watch cap with the letter "D" on it, blue t-shirt, dark slacks, and a blue bandana over his face approached him from behind.  This black male suspect was holding a black semi automatic pistol in his hand and then demanded the money that Hamilton was holding.  Hamilton said he refused to give up the money and said the suspect again demanded the money and pointed the pistol at Hamilton.  Hamilton advised he then pushed the pistol aside and the pistol discharged into the floor.  Hamilton said he then hit the suspect in the face and the suspect turned and ran from the business chased by Hamilton.  Hamilton said the suspect stopped, turned, and fired once more at Hamilton, however Hamilton was not struck.  The suspect then fled the location, firing two more shots in an apparent attempt to scare the customers into getting out of his way.  Hamilton advised he had been able to knock the suspects black knit watch cap off his head, causing the cap to fall near the front door of the business.  Hamilton advised the suspect fled out the door and appeared to meet with a 2nd black male and then both fled on foot from the area.  One 9mm shell casing and a fragmented projectile were located inside the business, along with the black watch cap.  These items were collected and entered into evidence by Crime Scene Officer Rhodes who arrived to process the location.  Hamilton indicated he did wish to prosecute.
>
>Crime Against Persons Detective R.D. Nutt #860 was assigned this case for Investigation and has personally reviewed the related reports generated. On 07-05-06 Detective Nutt was contacted by a subject who claimed to have information reference this offense.  This subject feared retaliation from the suspect, so for purposes of this affidavit, the subject will not be identified.  Detective Nutt has positively identified the informant, who advised is willing to testify in the future against the suspect in any Court proceeding.  The informant stated the suspect bragged directly to the informant that he had committed the robbery of the Lucky Spin Game room in Arlington between 0300 and 0400 hours on 07-04-06.  The informant received this information directly from the suspect several hours after the offense occurred.  The informant advised the suspect said he had tried to rob the business, but the employee would not give up the money.  The suspect told the informant he had shot at the employee and thought he might have hit him.  The suspect told the informant he had fired several other shots inside the business in an attempt to get out of the building.  The suspect told the informant he had lost his watch cap in the business, that the informant said had the letter "D" on it.   The informant was told by the suspect that he was

accompanied by another black male during the offense, who waited outside. The informant provided Detective Nutt with a black unknown brand 9mm pistol (serial #AX4287) loaded with one (1) 9mm round in the chamber and four (4) 9mm rounds in the magazine. The informant advised the suspect gave the informant this pistol to hide and advised it was the pistol used by the suspect in the robbery of the game room. The informant further provided a blue bandana the informant stated the suspect wore. The informant then identified the suspect as Jamar Charles Hill, a black male, and gave Hill's date of birth as 09-12-88. The physical description of Hill is consistent with that given by Hamilton of the suspect in the offense. The detailed information relayed by the informant matched the offense information completely. Due to the above listed facts and circumstances, a 1st degree Felony count of Aggravated Robbery will be sought against the Defendant Hill. Detective Nutt believes it is possible DNA evidence will be found on the recovered pistol and watch cap from this offense.

The defendant is identified further as Jamar Charles Hill b-m born 09-12-88 with [Texas ID card, FBI, SID, and Social Security numbers]. Hill has prior arrests for assault bodily injury – family member, evading arrest, unlawful carrying weapon, and Interfere with emergency call.

A search warrant shall not issue in Texas unless sufficient facts are presented through a sworn affidavit to satisfy the issuing magistrate that probable cause exists for its issuance. TEX. CODE CRIM. PROC. ANN. art. 18.01(b) (Vernon Supp. 2009); *see also Jones v. State*, 833 S.W.2d 118, 123-24 (Tex. Crim. App. 1992). The facts must illustrate (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched. TEX. CODE CRIM. PROC. ANN. art. 18.01(c). Whether the facts mentioned in an affidavit are adequate to establish probable cause depends on the "totality of circumstances." *Ramos v. State*, 934 S.W.2d 358, 362-63 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1198, 117 S.Ct. 1556, 137 L.Ed.2d 704 (1997). The magistrate must have sufficient facts upon which to conclude that there is a fair probability (not an actual showing) that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213,

238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *Guerra v. State*, 760 S.W.2d 681, 688 (Tex. App.–Corpus Christi 1988, pet. ref'd). The affidavit must be interpreted in a common-sense realistic manner, and the magistrate may draw reasonable inferences from facts and circumstances alleged in the affidavit. *Ellis v. State*, 722 S.W.2d 192, 196 (Tex. App.–Dallas 1986, no pet.). The reviewing court should accord those inferences great deference. *Ramos*, 934 S.W.2d at 363. Reviewing courts should not invalidate search warrants by interpreting affidavits in a hypertechnical manner. *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331; *Hackleman v. State*, 919 S.W.2d 440, 447 (Tex. App.–Austin 1996, pet. ref'd, untimely filed). If the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more, and the affidavit should be deemed sufficient. *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331. In conducting a *de novo* review of the trial court's ruling on a motion to suppress evidence based on a claim that the search warrant was not supported by probable cause, appellate courts apply the "bifurcated" standard of review articulated in *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Burke v. State*, 27 S.W.3d 651, 654 (Tex. App.–Waco 2000, pet. ref'd); *Wynn v. State*, 996 S.W.2d 324, 326-27 (Tex. App.–Fort Worth 1999, no pet.). We defer to the trial court's factual determinations that depend on credibility choices, but review its application of the law *de novo*. *Id*. There are no credibility determinations to be made by the trial court in examining the sufficiency of an affidavit to establish probable cause because probable cause to support the issuance of the warrant is determined form the four corners of the affidavit alone. *Tolentino v. State*, 638 S.W.2d 499, 501 (Tex. Crim. App. 1982). Thus, we review *de novo* the issue before the trial court-whether the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Lane v. State*, 971 S.W.2d 748, 751 (Tex. App.–Dallas 1998, pet. ref'd).

Appellant contends that the information contained in Detective Nutt's search-warrant

affidavit links Appellant to the offense through an unnamed informant without providing information regarding the veracity or credibility of the informant. He asserts that the facts set out in the affidavit supporting the information given by the unnamed informant are based upon his or her information, and not by independent evidence or further investigation verifying the informant's story. We disagree.

The detective's affidavit relates facts of the offense and a description of the robber as related by the store manager. There was an explanation in the affidavit that the detective was aware of the informant's identity, and he withheld that identity due to fear of retaliation. It was stated that the informant was willing to testify in further court proceedings.

Furthermore, many details stated in the affidavit matched the informant's statements with other evidence. Both the informant and the store manager stated that the manager refused to give over the money. The informant's statement that a shot was fired was matched by the store manager. The firing of the two shots while Appellant was escaping was matched by statements in the affidavit. It was related that Appellant had lost his cap and such a cap was recovered at the scene. It was related in the affidavit that Appellant gave the informant a 9 mm pistol which Appellant told her was used in the robbery, and the store manager told police that a 9 mm pistol was used in the robbery. Also, the police found a 9 mm shell casing and a fragment bullet inside the business. Appellant told the informant that he was accompanied by another African-American male who waited outside during the robbery, and the store manager told police that the robber fled out the door and appeared to meet with a second African-American male as they both fled from the area on foot.

After reviewing the totality of the circumstances delineated in Detective Nutt's affidavit, we conclude that the magistrate could readily have determined that the affidavit provided probable cause to issue a warrant for the sampling of Appellant's saliva. In any event error, if any, was harmless.

The harm analysis for the erroneous admission of evidence obtained in violation of the Fourth Amendment must be conducted under Rule 44.2(a)'s constitutional standard. TEX. R. APP. P. 44.2(a); *Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001). The question is whether the trial court's denial of Appellant's motion to suppress and admission of the evidence was harmless beyond a reasonable doubt. *See Williams v. State*, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997). In applying the "harmless error" test, our primary question is whether there is a "reasonable possibility" that the error might have contributed to the conviction. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999).

Our harmless error analysis should not focus on the propriety of the outcome of the trial; instead, we should calculate as much as possible the probable impact on the jury in light of the existence of other evidence. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001). We consider the source and nature of the error, the extent that it was emphasized by the State, its probable collateral implications, the weight a juror would probably place on the error, and whether declaring it harmless would be likely to encourage the State to repeat it with impunity. *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989). This requires us to evaluate the entire record in a neutral, impartial, and even-handed manner, not "in the light most favorable to the prosecution." *Id.* at 586.

Appellant alleges that the error is harmful because had the DNA evidence been excluded, the only other evidence linking Appellant to the offense was Washington's uncorroborated accomplice-witness testimony. But there was more than adequate evidence linking Appellant to the crime. The store manager testified that a 9 mm pistol was used during the offense. He identified the toboggan cap and the 9 mm gun as being used by the robber. Appellant wrote an incriminating letter and many

other details in the affidavit matched the testimony of Washington, the store manager, and evidence the police found on the scene. We overrule Appellant's sole issue and affirm the judgment of the trial court.


ANN CRAWFORD McCLURE, Justice

November 4, 2009

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J., not participating

(Do Not Publish)