IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0946-10





 

THE STATE OF TEXAS



v.
 


CHRIS ALLEN MCLAIN, Appellee





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SEVENTH COURT OF APPEALS


HALE COUNTY





 Hervey, J., delivered the opinion of the Court in which Keller, P.J., Meyers, 
Price, Womack, Keasler and Cochran, JJ., joined. Johnson, J., filed a dissenting
opinion. 

 

O P I N I O N 


 A Hale County Grand Jury indicted appellee on a charge of possession with the intent to
deliver methamphetamine, in an amount of four grams or more but less than two hundred grams. 
Appellee's trial counsel filed a motion to suppress the contraband seized as a result of a search
authorized by a search warrant. The trial court granted the motion to suppress, and the court of
appeals affirmed the judgment. We will reverse and remand to the trial court.


I. FACTUAL BACKGROUND

 Plainview Police Department police officers executed a search warrant at Appellee's
home and business on February 27, 2009. During the execution of the search warrant, the officers
seized over 100 grams of methamphetamine. A Hale County grand jury indicted the Appellee on
April 17, 2009. Appellee's counsel filed a motion to suppress on June 16, 2009. The trial court
granted the suppression motion on July 14, 2009. In the trial court's findings of fact and
conclusion of law, it found that "there was no point of reference given in the affidavit for any
time frame for any of the substantive information in the affidavit" to support the magistrate's
finding of probable cause. The affidavit supporting the search warrant, in whole, reads as follows: 

 The Affiant, Ramiro Sanchez is a certified peace officer of The State Of Texas, is
employed by the Plainview Police Department, who is assigned to the Criminal
Investigation Division as the Narcotics Detective. The Affiant is in good standing with his
employing agency and with the State Of Texas. The Affiant has received information
from unknown callers through the crime line, office phone and cell phone that Chris
McClain is storing and selling methamphetamine "meth" at his residence and business,
which is 3607 N. Columbia. Some of the callers stated that Chris is also buying or taking
stolen items for payment on narcotics. The Affiant has previous knowledge that Chris was
a user of methamphetamine and had been seen with other users and dealers of
methamphetamine, who were under investigation by the Affiant at that time. The Affiant
set up surveillance on the suspected place and did observe some minute traffic, which is a
sign of narcotics trafficking from the affiant's training and experience. The Affiant
observed some persons coming and going from the suspected place to be known users or
dealers of narcotics, from past investigations. The time of the traffic varied but appeared to
be most heavy at night, which is very common in the use or sale of methamphetamine. The
Affiant then received the same information from different confidential informants. All
informants have given true information in the past and are in good standing. The
information received advised that Chris was using and selling methamphetamine. The
informants advised that Chris was also buying and taking as payment for "meth", stolen
items like welders, generators, vehicle parts, vehicles, trailers, trucks, tools, guns and
many other items. They also advised that Chris will hide or store the methamphetamine in
all different kinds of places, from inside the residence and shop to the vehicles and trailers
on property. Inside the residence there is a fireplace and some of the bricks around it are
loose and used to hide the "meth". In the shop, some of the tool boxes are used to store it
and also the office in the shop. In the past 72 hours, a confidential informant advised the
Affiant that Chris was seen in possession of a large amount of methamphetamine at his
residence and business. The informant again advised that Chris will hide or store the
methamphetamine in all different places on the property. The informant is trustworthy,
credible, and reliable and holds a steady fulltime job. Therefore the Affiant has reason to
believe and does believe that methamphetamine "meth" is being sold and stored at 3607
N. Columbia. The Affiant asks that the identity of the informant be kept secret for security
reasons.


 The State claimed on direct appeal that the trial court abused its discretion in granting the
suppression motion because the statement about the "past 72 hours" could imply that the
informant saw Appellee with the methamphetamine during that time. The court of appeals
disagreed, reasoning that "such implication is not supported by the plain text of the affidavit,"
and that under a common sense reading of the affidavit, the reference to the "past 72 hours"
referred to when the detective spoke to the informant, not to when the informant got the
information about the Appellee. (1) Focusing solely on the "past 72 hours" statement in the search
warrant affidavit, the court of appeals decided that the "affidavit fail[ed] to give the magistrate any
idea of when any of the activity which allegedly supports the issuance of a warrant occurred"
which was "fatal to the efficacy of the affidavit." (2) 

II. DISCUSSION

Grounds for Review

 This Court granted review of the following grounds: (1) Does an appellate court violate
the prohibition on "hypertechnical" review of a warrant affidavit when it strictly applies rules of
grammar and syntax in its analysis? (2) Is it appropriate for an appellate court to base its opinion
on implications found within a warrant affidavit, rather than deferring to any reasonable
inferences the reviewing magistrate could have drawn from the affidavit? (3) Did the appellate
court err by failing to address whether the trial court afforded appropriate deference to the
reviewing magistrate's implicit finding that the informant described in the affidavit saw the
methamphetamine "in the past 72 hours?"

Standard of Review And Requirement of Probable Cause

 This Court normally reviews a trial court's ruling on a motion to suppress by using a
bifurcated standard of review, where we give almost total deference to the historical facts found
by the trial court and review de novo the trial court's application of the law. (3) However, when the
trial court is determining probable cause to support the issuance of a search warrant, there are no
credibility determinations, rather the trial court is constrained to the four corners of the affidavit. (4)
Accordingly, when we review the magistrates's decision to issue a warrant, we apply a highly
deferential standard because of the constitutional preference for searches to be conducted pursuant
to a warrant as opposed to a warrantless search. (5) As long as the magistrate had a substantial basis
for concluding that probable cause existed, we will uphold the magistrate's probable cause
determination. (6)

 We are instructed not to analyze the affidavit in a hyper-technical manner. (7) When
"reviewing a magistrate's decision to issue a warrant, trial and appellate courts apply a highly
deferential standard in keeping with the constitutional preference for a warrant. Thus, when an
appellate court reviews an issuing magistrate's determination, that court should interpret the
affidavit in a commonsensical and realistic manner, recognizing that the magistrate may draw
reasonable inferences. When in doubt, we defer to all reasonable inferences that the magistrate
could have made." (8) 

 Since the Fourth Amendment strongly prefers searches to be conducted pursuant to search
warrants, the United States Supreme Court has provided incentives for law-enforcement officials
to obtain warrants instead of conducting warrantless searches. (9) One incentive is a less-strict
standard for reviewing the propriety of a search conducted pursuant to a warrant. (10) In this
situation, courts must give great deference to the magistrate's probable-cause determination. (11)
Both appellate courts and trial courts alike must give great deference to a magistrate's implicit
finding of probable cause. (12) 

 An evaluation of the constitutionality of a search warrant should begin with the rule "the
informed and deliberate determinations of magistrates empowered to issue warrants are to be
preferred over the hurried action of officers who may happen to make arrests." (13) Reviewing
courts should not "invalidate the warrant by interpreting the affidavit in a hypertechnical, rather
than commonsense, manner." (14) When in doubt, the appellate court should defer to all reasonable
inferences that the magistrate could have made. (15)

 A magistrate shall not issue a search warrant without first finding probable cause that a
particular item will be found in a particular location. (16) Probable cause exists when, under the
totality of the circumstances, there is a fair probability that contraband or evidence of a crime will
be found at the specified location. (17) It is a flexible and non-demanding standard. (18) The facts stated
in a search affidavit "must be so closely related to the time of the issuance of the warrant that a
finding of probable cause is justified." (19)

Analysis

 The court of appeals violated the prohibition on "hypertechnical" review of a warrant
affidavit when it strictly applied rules of grammar and syntax in its analysis. Further, the court of
appeals reviewed the affidavit by focusing on what the officer "implied" rather than on what the
magistrate could have reasonably inferred. The words "implies" and "inference" speak to
information not specifically stated. (20) However, it is the reasonableness of the magistrate's
conclusions based on facts and inferences which is the proper standard. The Supreme Court has
explained how we must review determinations of probable cause:

 [A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the
form of de novo review. A magistrate's determination of probable cause should be paid
great deference by reviewing courts. . . . A grudging or negative attitude by reviewing
courts toward warrants . . . is inconsistent with the Fourth Amendment's strong preference
for searches conducted pursuant to a warrant; courts should not invalidate warrant[s] by
interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." (21) 


 The court of appeals acknowledged that a highly deferential standard applies to the
magistrate's decision in an affidavit, but failed to apply that standard in the case at hand. The
court of appeals analyzed, in isolation, the sentence, "In the past 72 hours, a confidential
informant advised the Affiant that Chris was seen in possession of a large amount of
methamphetamine at his residence and business." The court of appeals agreed with the trial court
that the affidavit "lacked any specificity regarding when the matters referenced" occurred and held
that a "common sense reading" indicated that the affidavit's reference to the "past 72 hours"
referred to "when the affiant spoke to the confidential informant, not when the confidential
informant acquired the information." (22) The court of appeals's analysis conflicts with the
established requirement that courts review warrant affidavits as a whole. (23) As a result, it found
that the affidavit failed to provide probable cause. 

 While the plain meaning of the aforementioned statement, read literally, fails to clearly
indicate exactly when the informant observed Appellee in possession of the methamphetamine,
we believe that the magistrate could have reasonably inferred that the informant observed
Appellee with the methamphetamine within the past 72 hours. By looking at the affidavit in its
entirety, and not just this one sentence in isolation, it certainly would have been reasonable for the
magistrate, considering all the facts in the affidavit along with reasonable inferences from those
facts, to conclude that there was a fair probability that there was methamphetamine at appellee's
home at the time of the issuance of the warrant. We also believe that a magistrate's experience
and expertise in these matters would indicate that the time at which the affiant received the
information from the confidential informant that Appellee possessed methamphetamine was
irrelevant, but that the time at which the confidential informant observed such possession was
necessary to establish probable cause. And if there was any doubt, the trial and appellate courts
both should have deferred to the magistrate's determination. (24) They failed to do so.

 We further note that other information in the affidavit from "unknown callers" stating that
appellant "is storing and selling methamphetamine 'meth' at his residence and business"
combined with the affiant's statements in the affidavit regarding the affiant's surveillance and
observations consistent with ongoing drug activity at appellant's residence and business could
also justify a magistrate's conclusion that methamphetamine was probably at the suspected place
when the warrant issued (emphasis supplied). See Flores, 827 S.W.2d 419 (use of present verb
tense in affidavit that confidential informant advised affiant that "there is stolen property at the
suspected residence" supported magistrate's conclusion that the stolen items were at the suspected
place when he issued the warrant) (emphasis in original) and at 420 ("When stolen items have
been viewed more than once, and there is nothing to suggest that the stolen items will not be at the
suspected place in the future, the magistrate may weigh this fact in his calculations concerning the
probability that the items will be on the suspected property."); Swearingen, 143 S.W.3d at 813
(Cochran, J., dissenting) (staleness of information in a search warrant affidavit depends on the
particular circumstances of the case: "An ongoing enterprise tends to continue over time, but a
single possession of a consumable contraband may be over with a gulp or snort and never
reoccur"); see also United States v. Johnson, 461 F.2d 285, 287 (10th Cir. 1972) ("Where the
affidavit recites a mere isolated violation it would not be unreasonable to imply that probable
cause dwindles rather quickly with the passage of time. However, where the affidavit properly
recites facts indicating activity of a protracted and continuous nature, a course of conduct, the
passage of time becomes less significant.").

 As stated in Rodriguez, "the informed and deliberate determinations of magistrates
empowered to issue warrants are to be preferred over the hurried action of officers who may
happen to make arrests." (25) The opinion of the court of appeals chose the "hurried" words of the
officer over reasonable inferences that the magistrate could have made. Both the trial court and
the court of appeals were reviewing the affidavit in search of what the affiant was conveying as
the author of the affidavit, rather than inquiring into the reasonableness of the conclusions drawn
by the magistrate (i.e., they were reviewing the affidavit in search of what the affiant was
implying or conveying by the statement "in the last 72 hours" and not in search of what the
magistrate could have reasonably inferred from that statement). Reviewing courts should only be
concerned with whether the magistrate's determination in interpreting and drawing reasonable
inferences from the affidavit was done in a commonsensical and realistic manner. And reviewing
courts should defer to all reasonable inferences that the magistrate could have made.

III. CONCLUSION

 We reverse the judgment of the court of appeals and remand this case to the trial court for
further proceedings not inconsistent with this opinion.


 Hervey, J.


Delivered: April 13, 2011

Publish

1. See State v. McLain, 310 S.W.3d 180, 183 (Tex. App.-Amarillo 2010).
2. See id.
3. Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007).
4. Hankins v. State, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004). 
5. Swearingen v. State, 143 S.W.3d 808, 810-11 (Tex. Crim. App. 2004) (citing Illinois v.
Gates, 462 U.S. 213, 234-37 (1983)). 
6. Gates at 236.
7. Id.
8. Rodriguez v. State, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007) (footnotes and citations
to authority omitted)..
9. Lane v. State, 971 S.W.2d 748, 750-51 (Tex. App.--Dallas 1998, pet. ref'd).
10. Rodriguez at 61; Ornelas v. United States, 517 U.S. 690 (1996). 
11. Rodriguez at 61; Gates, 462 U.S. at 234-37.
12. Rodriguez at 61.
13. Rodriguez at 59.
14. Rodriguez at 59.
15. Id. at 61
16. Id. at 61; U.S. CONST. amend. IV ("The right of the people to be secure in their
persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be
violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation,
and particularly describing the place to be searched, and the persons or things to be seized.")
17. Rodriguez at 61.
18. Id.
19. Flores v. State, 827 S.W.2d 416, 418 (Tex. App.-- Corpus Christi 1992, pet. ref'd.);
see also Sherlock v. State, 632 S.W.2d 604, 608 (Tex. Crim. App. 1982) (affidavit is "inadequate
if it fails to disclose facts which would enable the magistrate to ascertain from the affidavit that
the event upon which the probable cause was founded was not so remote as to render it
ineffective") (internal quotes omitted).
20. THE AMERICAN HERITAGE BOOK OF ENGLISH USAGE (Houghton Mifflin,
1996).
21. Gates, 462 U.S. at 236 (citations and internal quotes omitted); United States v.
Ventresca, 380 U.S. 102, 108 (1965).
22. McLain at 183.
23. Hall v. State, 795 S.W.2d 195, 197 (Tex. Crim. App. 1990).
24. Rodriguez at 61.
25. Rodriguez at 59.